NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL–CIO, Appellant,

v.

UNITED STATES POSTAL SERVICE.

No. 77–1442.

United States Court of Appeals, District of Columbia Circuit.

Argued April 5, 1978.

Decided Dec. 8, 1978.

---

**76.** *See* page —— of 192 U.S.App.D.C., page 1167 of 590 F.2d & note 59 *supra.*

Mozart G. Ratner, Washington, D. C., with whom Daniel B. Edelman, Washington, D. C., was on the brief, for appellant.

Stephen E. Alpern, Atty., U. S. Postal Service, Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before LUMBARD,* Senior Circuit Judge for the United States Court of Appeals for the Second Circuit, and McGOWAN and MacKINNON, Circuit Judges.

Opinion for the court filed by MacKINNON, Circuit Judge.

MacKINNON, Circuit Judge:

The issue presented by this case is narrow—whether the district court erred when it refused to assess attorneys' fees against the Postal Service on the facts of this case.

## I

On April 17, 1975, Robert T. Williams, a postal employee in the Newark, Ohio, Post Office, was arrested and charged with "Theft of Mail by a Postal Employee." As a result, the Postal Service suspended Williams without pay effective April 22, 1975. This suspension was issued pursuant to Article XVI of the collective bargaining agreement between the National Association of Letter Carriers (the "Union") and the Postal Service. Appellant's App. (hereafter "App.") at 14. Pursuant to Article XV of that agreement, App. 9–13, the Union submitted a grievance on Williams' behalf challenging the suspension. While that grievance was pending, a grand jury issued on June 3, 1975 a four-count indictment against Williams for mail theft. On September 9, 1975, Williams was acquitted by a jury of all charges. The Postal Service did not terminate the suspension, but instead issued on September 26, 1975 a letter to Williams proposing to remove him from the Postal Service for unauthorized removal of mail. On October 8, 1975, Williams was removed from the Postal Service, effective October 28, 1975.

The Union filed another grievance, this time challenging Williams' discharge. The Union and Postal Service agreed to consolidate the removal grievance and the suspension grievance for arbitration. A hearing on both grievances was held on November 17, 1975, and the arbitrator issued his award on March 19, 1976, finding that "there was not just cause to suspend and/or remove Robert Williams from the Postal Service." As a remedy, the award concluded:

He [Williams] is reinstated with full seniority and other contractual benefits and shall be made whole by payment of his regular wages lost as a result of his improper suspension and removal, said payment to be made without delay.

App. 26.

On March 25, the Postal Service requested clarification of the arbitrator's award with respect to the length of the period of "improper suspension," that is, whether the suspension was improper from the date of the original indefinite suspension (April 22, 1975), or from the date of acquittal (September 9, 1975), or from the date of conversion of the suspension to discharge (October 28, 1975). App. 86. Appellant opposed the request for clarification, arguing that the award was already clear, App. 87, and the record does not show the issuance of any clarifying statement by the arbitrator.

On May 7, 1976, the Union brought an action in the district court to compel enforcement of the award in accord with its understanding of the terms. It was the Union's position that the period of improper suspension commenced on the date of the initial suspension of Williams. The Postal Service, however, contended that the period commenced on the date of Williams' acquittal on the criminal charges brought against him and on which his suspension had been based. Prior to that time, the Service argued, it had reasonable cause to believe, based on the indictment, that Williams was guilty of a crime for which a sentence of imprisonment could be imposed. The Postal Service, though disagreeing with the award even as it interpreted it, reinstated Williams as an employee and began to compute the back pay from the date of acquittal to the date of reinstatement.

In the action in the district court, the judge on February 24, 1977 granted summary judgment to the Union. The court said that the language of the award was

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

"perfectly clear," App. 120, and that the arbitrator meant the suspension itself was "improper," and that the Postal Service was liable for back pay to the date of the original suspension. App. 121. However, the court said it could "perceive of no basis . . . for awarding attorney's fees or exemplary damages to plaintiff." *Id.* The Union sought reconsideration of that portion of the district court's judgment. The court denied the Union's motion, stating that "[c]ontrary to plaintiff's contentions, the court did not regard as 'frivolous' defendant's position with respect to the meaning of the arbitration award involved in this case." App. 152. The court also gave an independent ground for denying the assessment of attorneys' fees, noting the lack of "grounds for an award of attorneys' fees against the United States Postal Service" in the Postal Reorganization Act. The court also cited *Nolan v. Woodruff,* 68 F.R.D. 660 (D.D.C.1975), which found the doctrine of sovereign immunity applicable to the Postal Service.

In this court, the Union seeks reversal of that portion of the district court's judgment denying its request for attorneys' fees.

## II

■ The Supreme Court has, recently and emphatically, reaffirmed the American tradition that, in the absence of authorizing statute or contractual commitment, a successful litigant is not entitled to attorneys' fees. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). *Cf. Christianburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). In *Alyeska,* the

Court recognized that the general rule is subject to certain narrow exceptions which devolve from the historic power of equity. Thus, a court may

> permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit.

421 U.S. at 257, 95 S.Ct. at 1621. Also, attorneys' fees may be assessed "for the 'willful disobedience of a court order . . as part of the fine to be levied on the defendant[,]' [citations omitted]; or when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .' [citations omitted]." Id., at 258–59, 95 S.Ct. at 1622.

Appellant's action in the district court was brought under section 1208(b) of the Postal Reorganization Act of 1970, 39 U.S.C. § 1208(b).[1] Appellant correctly notes that this statute is the analogue of section 301(a) of the Labor-Management Relations Act of 1947.[2] With regard to section 301, appellant cites to us the long line of cases recognizing the authority conferred by the statute on the federal courts to enforce collective bargaining promises to arbitrate and emphasizing the federal labor law policy favoring final and binding arbitration of labor disputes. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers*

---

1. Section 1208(b) of the Postal Reorganization Act of 1970, 39 U.S.C. § 1208(b), provides as follows:

 Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy.

2. Section 301(a) of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), provides as follows:

 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without respect to the citizenship of the parties.

of America v. Enterprise Wheel & Car Co., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Boys Markets, Inc. v. Retail Clerks Union Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). From this, appellant argues that award of attorneys' fees to discourage unjustified non-compliance with final binding arbitration awards is a necessary consequence of Congress' finality policy. Accordingly, appellant argues that awarding attorneys' fees is also necessary in enforcing the policies which underlie section 1208(b) of the Postal Reorganization Act, since that statute is based upon the provision in the federal private labor law statutes from which the finality policy devolves.

Appellant's argument misconceives in important respects the circumstances under which courts may award attorneys' fees. Given the traditional American rule recognized and reaffirmed in Alyeska that in the absence of legislation or contract providing otherwise litigants must pay their own attorneys' fees, the focus of the proper analysis must be on whether the circumstances of the particular case fall within one of the recognized exceptions—statutory, contractual, or equitable—to the rule where the award of fees is proper. See Cuneo v. Rumsfeld, 180 U.S.App.D.C. 184, 187, 553 F.2d 1360, 1363 (1977); National Council of Community Mental Health Centers v. Mathews, 178 U.S.App.D.C. 237, 546 F.2d 1003 (1976), cert. denied, Wagshal v. Califano, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977).

### A.

Lacking a contractual basis for the assessment of attorneys' fees against the Postal Service, the principal argument of appellant is that section 1208(b) is a statutory authorization for the assessment of fees. Appellant does not deny that the clear language of the statute does not authorize in explicit, express terms the award of attorneys' fees to the successful litigant in an action brought under the statute. Rather, appellant contends that awards are permissible by virtue of a "judicial gloss" rendered on section 301(a), which by analogy applies to section 1208(b).

The decision in Alyeska guides us here. The Court stated:

What Congress has done . . ., while fully recognizing and accepting the general rule, is to make specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights. These statutory allowances are now available in a variety of circumstances, but they also differ considerably among themselves. . . . Under this scheme of things, it is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine. . . . Congress itself presumably has the power and judgment to pick and choose among its statutes and to allow attorneys' fees under some, but not others. But it would be difficult, indeed, for the courts, without legislative guidance, to consider some statutes important and others unimportant and to allow attorneys' fees only in connection with the former. . . . Since the approach taken by Congress to this issue has been to carve out specific exceptions to a general rule that federal courts cannot award attorneys' fees beyond the limits of 28 U.S.C. § 1923, those courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation or to pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others, depending upon the courts' assessment of the importance of the public policies involved in particular cases.

421 U.S. at 260–69, 95 S.Ct. at 1623–1627. The statute in direct question here, section 1208(b), does not authorize the assessment of attorneys' fees by the successful party against his opponent. Nor does section 301(a), the statute which appellant argues has received a judicial gloss which should be applied by analogy to section 1208(b), expressly authorize the assessment of attor-

neys' fees by the successful party against the opponent.

■ As *Alyeska* directs, we are not free to fashion an award of attorneys' fees where Congress has not done so. It may be, as appellant argues, that assessing attorneys' fees in appropriate cases furthers the policy of the Postal Reorganization Act. That, however, is not a question addressed to this court; rather, as stated in *Alyeska*, that is a suggestion to be made to Congress. Congress has seen fit to authorize the assessment of attorneys' fees in favor of the prevailing party in federal court litigation in many instances,[3] but it has not done so here.[4] There is no statutory basis for the relief appellant seeks. Our search and that of counsel have found no reported decisions on section 1208(b). However, those cases which have considered this issue in the con-

text of section 301 and other national labor law contexts support our position in this case.[5]

**B.**

■ The remaining question is whether appellant is entitled to the award of attorneys' fees pursuant to the equitable powers of the court. Absent express statutory authority, federal courts still have "inherent [equitable] power" in a federal question case (not in diversity cases) to award attorneys' fees for "willful disobedience of a court order as part of the fine to be levied on the defendant . . . or when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons . . . . *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. at 258–259, 95 S.Ct. at 1622.[6] There being no fund or property

3. In 1975, the Supreme Court listed over 25 statutes containing express language authorizing the assessment of attorneys' fees in favor of the prevailing party. *Alyeska, supra,* 421 U.S. at 260–61 n.33, 95 S.Ct. 1612.

4. Exceptions to the general rule that the litigating party must bear its own costs can be found in the general costs statutes, 28 U.S.C. §§ 1920, 1923(a), 2412, but these statutes do not authorize the assessment of attorneys' fees against the losing party.

5. In *International Brotherhood of Electrical Workers Local 12 v. A–1 Electric Service, Inc.,* 535 F.2d 1 (10th Cir.), *cert. denied,* 429 U.S. 832, 97 S.Ct. 94, 50 L.Ed.2d 96 (1976), an action commenced under § 301(a) of the LMRA, the court cited *Alyeska* and held that plaintiff-union was not entitled to attorneys' fees, insofar as Congress had not specifically provided for them under this Act.

 In *International Association of Machinists Lodge 1194 v. Sargent Industries,* 522 F.2d 280 (6th Cir. 1975), an action to enforce a pension agreement, the court reversed the district court's award of attorneys' fees for the union. The court said that this result was required by *Alyeska,* "[d]espite Appellees' vindication of an important national labor policy." 522 F.2d at 284.

 In *Western Electric Co., Inc. v. Communication Equipment Workers, Inc.,* 554 F.2d 135 (4th Cir. 1977), an action brought under § 301(a) of the LMRA, the court cited *Alyeska* and affirmed the district court's denial of attorneys' fees for the union. 554 F.2d at 138.

 In *General Drivers Local 120 v. Sears, Roebuck & Co.,* 535 F.2d 1072 (8th Cir. 1976), an appeal of a district court's order denying en-

forcement of an arbitration award, the court held in favor of the union-appellant, but refused to award attorneys' fees, citing *Alyeska.* The court said that attorneys' fees were not awardable absent either statutory authorization or bad faith on the part of the losing party, in the usual case. 535 F.2d 1076–77. *Sears* would appear to overrule by implication *General Drivers Local 554 v. Young & Hay Transportation Co.,* 522 F.2d 562 (8th Cir. 1975). Without benefit of *Alyeska,* the court said that award of attorneys' fees in a § 301 action under the LMRA was appropriate to effectuate national labor policy. 522 F.2d at 568. This reasoning does not survive *Alyeska,* as apparently has been recognized in *Sears.*

 In *General Telephone Co. v. International Brotherhood of Electrical Workers Local 89,* 554 F.2d 985 (9th Cir. 1977), the court affirmed the district court's rejection of General Telephone's challenge of an arbitration award. The court rejected appellee's request for attorneys' fees, stating that "[t]here is no congressional authorization for an award of fees in these circumstances, nor do we consider this to be an appropriate case for the utilization of the bad faith or common benefit exceptions of the American rule." 554 F.2d at 987.

6. If there is no statutory basis for the award of attorneys' fees, the question is whether the losing party's behavior falls within an equitable exception. In *Amoco Oil Co. v. Oil, Chemical and Atomic Workers Local 7–1,* 548 F.2d 1288 (7th Cir.), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977), the court overlooked *Alyeska,* but even so could not find that the Company's challenge of the arbitration award was "totally without justification" or

being held or recovered by appellant as trustee or otherwise, appellant must show that the conduct of the Postal Service was in "willful disobedience of a court order" or amounted to acts taken "in bad faith, vexatiously, wantonly, or for oppressive reasons."[7] We find that the record shows, as the district court correctly perceived, that the Postal Service did not engage in conduct that would justify the assessment of attorneys' fees in appellant's favor as the prevailing party.

We do not believe that the action of the Postal Service in this case was in bad faith, vexatious, wanton or undertaken for oppressive reasons justifying the imposition of attorneys' fees.[8] The district court specifically found that appellee's arguments were not "frivolous," App. 152, and we perceive

no basis for reversing the district court's finding on this point. The argument advanced by the Postal Service did have a basis in the terms of the award, notwithstanding the district court's unwillingness to label those terms "ambiguous." In logic, the "improper" period of suspension could have commenced on the date Williams was acquitted of the pending charges, for prior to that time the Postal Service had just cause, it could reasonably be argued, to believe Williams might be guilty of a crime which called in question his ability to perform properly his employment. Counsel on appeal point to language in the arbitrator's opinion that can reasonably be construed as supporting such an interpretation of the award.[9]

---

"so wholly devoid of merit" as to invoke the equitable exception to the general American rule recognized in *Alyeska*. *Compare International Association of Machinists District 776 v. Texas Steel Co.*, 538 F.2d 1116 (5th Cir. 1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977).

7. The general American rule that litigants pay for their own attorneys' fees, subject to a bad faith equitable exception, was reaffirmed in *Hutto v. Finney*, 437 U.S. 678, 689, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. at 258–259, 195 S.Ct. 1612. *Cf.* Fed.R.Civ.P. 37(a)(4) (costs and attorneys' fees incurred in obtaining order compelling discovery assessed against party necessitating motion thereto, unless court finds opposition to motion was substantially justified or that other circumstances make award of expenses unjust; same standard applies with respect to party seeking motion if motion denied); Fed.R.Civ.P. 56(g) (if affidavits in support of motion for summary judgment are presented in bad faith or solely for purpose of delay, party employing them may be required to pay expenses incurred by opposing party, including attorneys' fees).

8. What is to be considered "vexatious" within the meaning of the statutory standard for the payment of attorneys' fees in Title VII actions was discussed in *Christianburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The Court explained that the term "vexatious" does not imply that "the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him." 434 U.S. at 421, 98 S.Ct. at 700. Instead, the Court reasoned, it is only necessary in the Title VII context that the plaintiff's action be "frivolous, unreason-

able, or without foundation, even though not brought in subjective bad faith." *Id.*

In *United States Steel Corp. v. United States*, 519 F.2d 359 (3d Cir. 1975), the court concluded that the district court had not abused its discretion in denying a fee award to a defendant that had successfully resisted an EEOC demand for documents in a Title VII action, the court finding that the Commission's action had not been "unfounded, meritless, frivolous, or vexatiously brought." 519 F.2d at 363, 365. In *Carrion v. Yeshiva University*, 535 F.2d 722 (2d Cir. 1976), the court upheld an attorney's fee award to a successful defendant in a Title VII action, stating that such awards should be permitted "not routinely, not simply because he succeeds, but only where the action brought is found to be unreasonable, frivolous, meritless or vexatious." 535 F.2d at 727.

9. Counsel point to the following language of the arbitrator:

We have, then, a situation wherein a long service employee is charged with theft—tried and acquitted and then *recharged without any additional evidence*—continued on non-pay status even though *no probable cause that the charge could result in imprisonment exists*, and, in effect, is a "second bite at the apple" by the employer.

App. 27 (emphasis added). This might be construed to mean that the Service acted improperly when it continued the suspension and/or effectuated the discharge without any additional evidence. The arbitrator also stated in a prior paragraph: "No 'new' evidence was submitted by the employer." *Id.* This is not to say that this argument is persuasive; however, it is clear, as the district court recognized, that the argument is not frivolous.

 The mere fact that the Postal Service did not prevail before the district court does not mean that its conduct in this case was "vexatious" or "wanton." As stated by the Supreme Court in *Christianburg Garment, supra,*

> it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. . . . Even when the law or facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

434 U.S. at 421–22, 98 S.Ct. at 700. The position of the Postal Service was not without foundation, although the district court ultimately concluded that the position was wrong. The Service sought a clarification of the arbitration award long before this action began in the district court. App. 86. Throughout this case, it appears that the Service had a *bona fide* belief in the correctness of its position; nothing in the record even intimates to the contrary.[10]

We conclude that there is no basis for invoking the equitable authority of the court to award attorneys' fees in favor of appellant. Appellant does not present any forceful argument for the proposition that the traditional American rule should not be applied to this case.

### III

 Appellant's arguments do not demonstrate any flaw in the analysis we posit above. Appellant has pointed to several cases where the court awarded attorneys' fees to the prevailing party in a section 301(a) action under the Labor-Management Relations Act, but all of these cases were either decided before or do not cite *Alyeska* and thus carry no weight now as authority for the proposition that section 301 is a statutory basis for the award of fees.[11]

---

**10.** Indeed, suspending a Postal Service employee who handles public mail and who is indicted by a grand jury for theft of mail is a very reasonable action to take. Postal Service regulations expressly sanction the immediate suspension (with no less than 24 hours' notice) "[w]hen there is reasonable cause to believe an employee guilty of a crime for which a sentence of imprisonment may be imposed." Postal Service Manual § 444.221e, *reprinted in* 39 C.F.R. § 211.2 (1976). *See also* [Postal Service] Employee and Labor Relations Manual § 660.361. Because the Postal Service might have been derelict in its duty had it not acted as it did, it is clear that the Service acted in good faith, not only in actually suspending Williams (an action not under review here), but also in construing the arbitrator's somewhat ambiguous decision in a light consistent with its responsibilities under the regulations.

It should also be noted that the arbitrator's approach here is not beyond dispute. In *Alsbury v. United States Postal Service*, 530 F.2d 852 (9th Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976), appellant was suspended and subsequently discharged from the Postal Service when he was charged with theft of postal property. He was acquitted by a jury of all charges, but his suspension and discharge was not set aside by the Service. He sought judicial review of his dismissal, and the court held that his acquittal did not render the dismissal arbitrary. In rejecting appellant's argument that the Service was "collaterally estopped 'to relitigate' the issue through suspension and discharge procedures," the court said:

> [I]t is obvious that the issue determined in the criminal trial was different from that decided in the discharge proceeding and that the burden of proof in the two was different. The issue in the criminal trial was whether the defendant was guilty of theft of postal property; that in the discharge proceeding was whether certain property had been unlawfully removed from the custody of the Postal Service. In the criminal trial the Government must prove its case beyond a reasonable doubt, while in a discharge proceeding proof based on a preponderance of the evidence is sufficient.

530 F.2d at 855.

**11.** In those cases where awards of fees to the prevailing party in this context have been sustained, the cases usually predated *Alyeska*. For example, in *District 50, United Mine Workers of America v. Bowman Transportation*, 421 F.2d 934 (5th Cir. 1970), the court affirmed the district court's award of attorneys' fees to the union, holding that the district court did not abuse its discretion under all the facts and circumstances of the particular case. 421 F.2d at 934. The court said that a district court could award attorneys' fees where it determines that a party has without justification refused to abide by an award of an arbitrator.

We note, however, that the language of some of these pre-*Alyeska* decisions suggests that the courts were actually awarding fees pursuant to their inherent equitable power. To the extent that actions of the parties were "without justification" or "without a basis," those acts may have been "vexatious" and thereby may have justified the award of attorneys' fees pursuant to the court's inherent equitable power. To that limited extent, then, appellant's argument that some of its cited cases survive *Alyeska* is correct. However, appellant on these facts has not demonstrated that the actions of the Postal Service were "without justification"; therefore, it is not proper to invoke the court's equitable power and award attorneys' fees to the Union.[12]

## IV

■ In any event, Congress has not expressly waived the immunity of the Postal Service with respect to attorneys' fees. We have no need to discuss the parameters of the Postal Service's sovereign immunity,[13]

*Id.* To the extent that this test is consistent with *Alyeska*'s "wilful disobedience" or "vexatiousness" standards, we agree with it. Also, in *Electrical, Radio and Machine Workers v. Peerless Pressed Metal Corp.*, 489 F.2d 768 (1st Cir. 1973), the court considered "the intransigence of appellee in resisting enforcement of the arbitration award" in directing that attorneys' fees be assessed against Peerless in connection with proceedings in the district court. The First Circuit did not have the benefit of *Alyeska*; the brief opinion does not indicate whether appellee's "intransigence" falls within the narrow exceptions in *Alyeska*. Also cited by appellant is *United Steelworkers of America v. Butler Mfg. Co.*, 439 F.2d 1110 (8th Cir. 1971), an action brought under § 301(a) of the LMRA. The court, citing *Bowman, supra*, held that an award of attorneys' fees was appropriate under the circumstances. 439 F.2d at 1112. In deciding that attorneys' fees in a § 301 action are "an appropriate item of damage to be awarded by courts in the enforcement of national labor policy," 439 F.2d at 1113, the court did not have the benefit of *Alyeska*. Yet the district court had specifically characterized the Company's defenses as showing "bad faith," 439 F.2d at 1112, thus making attorneys' fees awardable under the equitable exception to the general American rule recognized in *Alyeska*.

Appellant relies most heavily on *Local 149, United Automobile Workers of America v. American Brake Shoe Co.*, 298 F.2d 212 (4th Cir.), *cert. denied*, 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276 (1962), an action brought under § 301(a) of the LMRA, the court said it is clear that the district court had the power to award attorneys' fees to the union, based on the LRMA, constructions of the LRMA, and the "traditional practice of courts of equity." 298 F.2d at 216. In basing the district court's power upon the LRMA, the Fourth Circuit did not have the benefit of *Alyeska*, which no longer allows this line of reasoning. However, to the extent the result in *American Brake Shoe* is based on the court's inherent equitable power, that holding retains validity. The court stated the rule as follows: "In an appropriate case

attorneys' fees should be awarded against a party who, without justification, refuses to abide by the award of an arbitrator." *Id.* Action "without justification" may be "vexatious" within the meaning of *Alyeska*, thereby drawing the case within the equitable exception recognized by the Court in that case.

One case decided after *Alyeska* contains language consistent with the pre-*Alyeska* cases, but this case is of no precedential value for us due to its failure to cite or discuss *Alyeska*. In *International Association of Machinists District 776 v. Texas Steel Co.*, 538 F.2d 1116 (5th Cir. 1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977), an action to enforce an arbitration award, the court remanded the case to the district court for findings as to whether the Company's challenge to the arbitration panel's decision was "without justification." The court did not cite *Alyeska*; in any event, to the extent the remand was for the purpose of determining whether the Company's challenge was "vexatious," we do not disagree with the result in *Texas Steel*.

12. Nothing in the recent decision *Smith v. Califano*, 446 F.Supp. 530 (D.D.C.1978), cited to us by appellant, is inconsistent with our approach. The factual context of *Smith* is clearly distinguishable; that case involved attorneys' fees in an action brought to enforce civil rights under Title VII of the Civil Rights Act of 1964, which specifically provides for the award of attorneys' fees in appropriate cases. In holding that attorneys' fees could be awarded by the agency to parties who prevail at the administrative level, the court relied upon what is perceived as "clear Congressional intent to include attorneys' fees," something which is not present in this case.

13. *Cf.* 39 U.S.C. § 401(1); *Goodman's Furniture Co. v. United States Postal Service*, 561 F.2d 462 (3d Cir. 1977); *May Dept. Stores Co. v. Williamson*, 549 F.2d 1147 (8th Cir. 1977); *Standard Oil Division, American Oil Co. v. Starks*, 528 F.2d 201 (7th Cir. 1975); *Kennedy Electric Co. v. United States Postal Service*, 508 F.2d 954 (10th Cir. 1974).

**1180**

for as we recently stated in *Fitzgerald v. United States Civil Service Commission*, 180 U.S.App.D.C. 327, 330, 554 F.2d 1186, 1189 (1977),

> The import of *Alyeska* and [*United States v.*] *Testan* [, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)], we believe, is that a general waiver of sovereign immunity should not be construed to extend to attorney's fees unless Congress has clearly indicated that it should.

Irrespective of the extent to which the Postal Service's immunity from suit has been waived by Congress, no waiver is to be found with respect to attorneys' fees. This is an independent bar to the claim appellant presents here.

## V

From the above discussion, it is apparent that absent a statute or factual finding establishing an equitable exception, the district court was without authority to grant an award of attorneys' fees. This is the standard by which we test the district court's judgment; it is clear that the standard was not violated here. Indeed, the district court was correct in all material respects.

Accordingly, the judgment of the district court is

*Affirmed.*