**UNION DE TRONQUISTAS DE PUERTO RICO, LOCAL 901, Plaintiff,**

v.

**TRAILER MARINE TRANSPORT CORPORATION, Defendant.**

Civ. No. 82–0408CC.

United States District Court,
D. Puerto Rico.

Jan. 25, 1983.

Juan Ramón Acevedo-Cruz, Carreras, Acevedo & Farinacci, Hato Rey, P.R., for plaintiff.

Rafael Cuevas Kuinlam, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action to set aside an arbitrator's award holding that the grievance of employee Pablo Raúl Pagán was not arbitrable since it was not submitted within fifteen days after the employee received written notification of his discharge pursuant to Article XIII, Section 9 of the collective bargaining agreement. The action was originally filed in the Superior Court of Puerto Rico, San Juan Part, and removed to this Court pursuant to 28 U.S.C. Sec. 1441(b) and 29 U.S.C. Sec. 185(a). See: *Avco Corp. v. Aero Lodge 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Espino v. Volkswagen de Puerto Rico, Inc.,* 289 F.Supp. 979 (DPR 1968).

On March 24, 1982 defendant filed a motion for summary judgment alleging that the arbitrator's award is neither "clearly illegal" nor "wholly baseless and completely without reason" and requesting dismissal of this action. Plaintiff Union opposed the motion claiming that the arbitrator's decision was based on a "non-fact"—that the Union did not submit its grievance to the company until the time limits established by the collective bargaining agreement for the submission of disputes had expired—and, therefore, cannot stand. The pertinent undisputed facts which appear from the parties' motions and from exhibits filed therewith are as follows:

1. Plaintiff, Union de Tronquistas de Puerto Rico, Local 901 (the Union) and the defendant Trailer Marine Transport, Inc. (T.M.T.) are parties to a collective bargaining agreement covering the period from March 26, 1980 to March 25, 1983.

2. The grievant in the underlying proceeding, Pablo Raúl Pagán, prior to July 8, 1980, was an employee of T.M.T. and was covered by the aforementioned collective bargaining agreement.

3. On July 8, 1980 Pablo Raúl Pagán was discharged from his position at T.M.T. Written notice of his discharge was given to him that day. The reasons given for his discharge were his alleged acts of insubordination committed during that day.

4. On July 18, 1980 the Union sent a letter to Mr. José Luis Torres, Director of Industrial Relations of T.M.T. in which, among other things, it asked defendant employer to set aside Mr. Pagán's discharge.

5. On July 29, 1980 the Union sent another letter, this time to Mr. Elmer Keller, Manager of T.M.T., requesting that its letter of July 18 be considered as a submission of the employee's grievance pursuant to Article XIII, Section 4 of the collective bargaining agreement and as a request for a meeting pursuant to said section.

6. The collective bargaining agreement between the parties provides for compulsory arbitration of disputes concerning disciplinary actions and further provides that the arbitration award will "conform to law" and will be "final and firm." Article XIII, sections 8 and 10 of the collective bargaining agreement.

7. Section 9, Article XIII of the collective bargaining agreement provides that the parties shall submit any dispute to the grievance procedure within fifteen (15) days from the date that knowledge is acquired of the facts that gave rise to the dispute. Pursuant to section 4 of this article, the Union shall notify any grievance to the company's Manager of Industrial Relations and request a meeting to discuss the same.

8. Pursuant to the collective bargaining agreement three issues were submitted to the arbitrator:

a) Whether the Union waived its right to submit to arbitration the discharge of Pagán;

b) Whether the company complied with the agreed upon grievance and arbitration procedures;

c) Whether or not Pagán was discharged for cause.

9. Arbitration hearings were held on January 27, February 19, March 9 and March 24, 1981. A decision was rendered by the arbitrator on November 9, 1981.

10. In his decision the arbitrator held that the time limitation established in the agreement for the submission of disputes to the grievance and arbitration proceedings was not tolled by the July 18 letter and that the grievance was untimely submitted through the letter of July 29 addressed to Mr. Keller, thus, that the Union had waived its right to arbitrate the discharge of Pablo Raúl Pagán. Additionally, the arbitrator held that the company complied with the procedural clauses of the collective bargaining agreement and that the grievant was discharged for good cause.

■ In suits such as this, the applicable substantive law is federal law, which the courts must fashion from the national labor policy. See: *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Dorado Beach Hotel Corp. v. Unión de Trabajadores*, 317 F.Supp. 217, 224 (DPR 1970). Federal law prescribes that, although questions of "substantive arbitrability" of labor disputes are to be determined by the courts, issues of "procedural arbitrability," i.e., whether the grievant has exhausted all the steps provided in the grievance and arbitration procedure of the collective bargaining agreement, are to be decided by the arbitrator. See: *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The decision rendered by the arbitrator is generally nonreviewable by the courts, the exceptions to this rule being "few and of a most limited nature." *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1049 (1st Cir.1977); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). When an award manifests the arbitrator's infidelity to his obligation to interpret and apply the collective bargaining agreement, the courts may not enforce said award. *Id.* An award "unfounded in reason and fact" has been held to manifest such an infidelity to the arbitrator's duty. See: *Brotherhood of Railroad Trainmen v. Central Georgia Railway Co.*, 415 F.2d 403, 415 (5th Cir.1969), cert. denied 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970) cited in *Bettencourt*, 560 F.2d at 1049. Our Circuit has held that "where the 'fact' underlying an arbitrator's decision is concededly a non-fact and where the parties cannot fairly be charged with the misapprehension, the award cannot stand." *Electronics Corp. v. International Union of Electrical, Radio and Machine Workers*, 492 F.2d 1255, 1257 (1st Cir.1974). It is the Union's contention that the arbitrator's conclusion that the Union did not submit the dispute within the period established for this purpose is a "non-fact" and overlooks the fact that the letter of July 18, 1980 was to be considered as a submission of the dispute.

■ We do not think that the arbitrator's award is based on a "non-fact," as illustrated by the *Electronics* case. A reading of the award shows that the arbitrator considered the July 18 letter as a possible interruption of the period established by the agreement for the submission of disputes. Where reasonable justifications exist for the delay in filing a grievance, arbitrators have found that the period for its submission has been tolled. See: Elkouri and Elkouri, *How Arbitration Works*, 3rd Ed. (Washington, D.C.1976), pp. 145–168, at 152. In this case, the arbitrator found that the reasons advanced by the Union for the delay, i.e., that it could not ascertain the specific reasons for the employee's discharge, were not valid since the letter of discharge was clear and explained in detail the reasons for the discharge. It cannot be stated that this interpretation is completely unfounded in reason or fact. Therefore, under the narrow scope of this review the arbitrator's award cannot be set aside.

For the reasons stated, the motion for summary judgment is GRANTED and this action is DISMISSED.

SO ORDERED.