**CONGRESO DE UNIONES INDUSTRIALES,**
Plaintiff,

v.

**BACARDI CORPORATION, Defendant.**

Civ. No. 85–1146CC.

United States District Court,
D. Puerto Rico.

May 22, 1986.

Nicolás Delgado-Figueroa, Santurce, P.R., for plaintiff.

Jay A. Garcia-Gregory, Esq. Fiddler, González & Rodriguez, San Juan, P.R., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action under section 301 of the Labor Management Relations Act, 29 U.S.C. section 185. Plaintiff, Congreso de Uniones Industriales (Union), seeks to vacate an arbitrator's decision that the griev-ance of an employee of defendant Bacardi Corporation was not arbitrable because the employee-union member, Eduardo Quiñones, did not follow the pre-arbitration steps in the collective bargaining agree-ment within the time periods provided therein. Defendant filed a Motion for Summary Judgment contending that the arbitrator's decision is not reviewable since it rested mainly on credibility findings and that the Union is litigating this action in bad faith. Plaintiff filed an opposition and crossmotion for summary judgment stating that they were not challenging the arbitra-tor's credibility findings, but rather his in-terpretation of the evidence, namely, the cut-off date for the running of the term the arbitrator found the employee had not com-plied with and the arbitrator's failure to make a finding that the Union was notified. Defendant replied that the Union agreed to submit the question of arbitrability and could not now challenge the arbitrator's decision on these grounds, and that the matters now conclusorily stated by the Un-ion were not presented to the arbitrator. Defendant submitted a transcript of the arbitration proceeding, the arbitrator's de-cision, part of the collective bargaining agreement relevant to its arguments and certified translations of these documents. Plaintiff only presented an affidavit sub-scribed by its president.

The record shows that on Thursday, Sep-tember 6, 1984, after a prolonged strike lasting approximately six months, a collec-tive bargaining agreement between the parties was approved and the strike ended. On that same day and on the days follow-ing, the employer began notifying its em-ployees that the strike had ended and that they had to return to work on Monday, September 10, 1984. According to the un-disputed testimony of defendant's Human Resources Director, Mr. José A. Rivera, the notification efforts were made by phone, personally, through announcements in two radio stations and by the Union's own ef-forts. The efforts were successful. On the first workday after the strike, only five employees were absent; on the second day, only three, and on the third day, only two

and one of these was excused after calling. It is also undisputed that on September 6, 1984 the employer made a phone call to the number appearing in the employee's records and that the person who answered the phone, the employee's mother, was informed of the strike's termination and the return to work date. The employee did not report to work on the 10th, 11th or 12th of September. On September 12, 1984 the employer sent a letter by certified mail to the employee's address of record which was received at that address on September 13, 1984. The letter stated that the employee had been absent for three consecutive days without giving the employer any official notification and that if he did not report to work during the next twenty-four hours, the employer "would consider these absences as voluntary resignation and [they would] proceed to withdraw [the employee] from the Bacardi Corporation employee's list." On September 24, 1984,[1] the employee came to the Bacardi plant at around ten in the morning but was told by the security guard at the gate that he could only enter the premises accompanied by a Union representative. The employee went to the Union and, two days later, the Union decided to submit the matter to arbitration since the employer had not accepted the employee's medical evidence to justify his absence.

On the first day of the arbitration hearing, January 22, 1985, the arbitrator agreed to postpone the hearing until March 14, 1985 in order to enable the Union to prepare a defense on the question of whether the grievance was arbitrable, which, as admitted, it was not expecting the employer to raise. When the hearing was resumed, the parties agreed to present the evidence of the entire case together with the arbitrability matter in order to let the arbitrator decide the merits of the grievance, if he found it arbitrable. During the arbitration hearing employee Quiñones testified that he had gone to Illinois on July 10, 1984 while the strike was in progress to attend a sister's wedding and remained there until September 22, 1984 when he returned to Puerto Rico. He indicated that before leaving Puerto Rico he gave two co-workers a forwarding address in Illinois and asked them to inform him as soon as the strike ended. According to his testimony, on September 8, 1984 he received a telegram from one of these co-workers telling him that the strike had ended and that he had to return to work on Monday, September 10. On September 9, 1984 he placed a long-distance phone call to the co-worker and asked her to tell the employer that he was sick and could not report back to work on that date. On September 13, 1984, Mr. Quiñones received a call from his stepfather in Puerto Rico. He read him the September 12, 1984 letter advising that Quiñones report to work in twenty-four hours or lose his job. Quiñones further testified that on this same date he placed a long-distance call to the Bacardi plant in Puerto Rico and that he told Mr. José A. Rivera, defendant's Human Resources Director, that he was sick in Illinois and his doctor had recommended that he abstain from traveling. According to Quiñones, Rivera informed him that he was excused and asked him to bring medical evidence when he returned to work. Rivera denied ever receiving any call from Quiñones and stated that the first time they received news of Quiñones' whereabouts was when the Union representative requested an interview on September 25, 1984 to discuss the reason for his absences.

In deciding that the grievance was not arbitrable—a matter that the parties expressly agreed to submit to the arbitrator—arbitrator José C. Costa placed great emphasis on whether the employee had indeed called the employer on September 13, 1984 and informed of his condition, as claimed. According to the arbitrator's interpretation of the facts and the collective

---

**1.** It is not clear whether this date was the 24th or the 25th since the employee and the union representative testified at the arbitration hearing that it was the 24th but allege in the present case that it was the 25th. This discrepancy, however, is insignificant to the analysis and does not affect the arbitrator's decision.

bargaining agreement, this determination was crucial because the September 12 letter left no doubt of its termination of employment effects and Article VIII, Section 26, of the collective bargaining agreement required that a written complaint be presented to the Director of Human Resources by the affected employee or the union within five days following the events giving rise to the grievance. The arbitrator's rejection of the employee's testimony on the alleged September 13 phone call was not a bare conclusion. The arbitrator specifically referred to a number of inconsistencies and discrepancies in the record and to Quiñones' testimony. Furthermore, since all of the evidence was presented, the arbitrator also questioned the validity and the reliability of the medical evidence offered by the Union since it did not state that Quiñones could not travel and it was suspiciously "corrected" after arbitration proceedings had begun to include a greater number of days of treatment that would cover the relevant dates of the case. However, the diagnosis stated in the corrected medical certificate was different from the one indicated in the original certificate presented to the employer in September 1984. Regarding the Union's contention that it was never officially notified of the September 12, 1984 ultimatum letter, a matter also disputed by defendant's. Human Resources Director, the arbitrator did not see the need to make an express finding since the collective bargaining agreement did not require such notice nor was it required to file the written complaint within the five-day term since the agreement allowed an employee to submit the written complaint himself.

In reviewing an arbitrator's "final and binding" decision, the court's task is limited and "[u]nless the arbitral decision does not 'draw its essence from the collective bargaining agreement' ... a court is bound to enforce the award and is not entitled to review the merits of the contract dispute." *W.R. Grace v. Rubber Workers Local 759*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). Our circuit has indicated that the party requesting that a court overturn an arbitrator's decision must show that the decision is " 'unfounded in reason and fact,' [citations] is based on reasoning 'so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling' [citations] or is mistakenly based on a crucial assumption which is 'concededly a non-fact.' " *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1050 (1st Cir.1977) (citations omitted). In *Electronics Corp. v. International U. of E., R. & M.W., L. 272*, 492 F.2d 1255 (1st Cir.1974) the court vacated an arbitrator's award that was based on a concededly erroneous fact and indicated "[w]here *the* 'fact' underlying an arbitrator's decision is concededly a 'non-fact' and where the parties cannot fairly be charged with the misapprehension, the award cannot stand." *Id.* at 1257. In the present case, none of the alleged "errors" in the arbitrator's decision can be considered unreasonable or erroneously premised under this applicable narrow standard of review or even under a substantial evidence standard of review. *See id.*

We also understand that determining whether Quiñones made the September 13 phone call to the employer is crucial to the arbitrability issue and to the merits of the grievance. Plaintiff cannot challenge the arbitrator's decision without questioning the credibility assessment made by him on that issue. If the September 13 call was not made, it necessarily follows that the employee did not pursue any of the pre-arbitration steps in the collective bargaining agreement and there was no valid justification presented to the employer to excuse this abandonment. It also follows that the employee never presented a *timely* excuse for his two-week absence. Plaintiff's position that the September 12 letter did not start the five-day period because it was not a letter of dismissal is not supported by the language of the collective bargaining agreement which does not make the grievance procedure depend only on dismissal actions. That position is also in conflict with the express terms of the letter and with the arbitrator's finding as to the ef-

fect of the letter. No evidence was presented before the arbitrator that the collective bargaining agreement admitted any other interpretation than what its clear terms stated and the only evidence presented that could have altered the results was Quiñones' testimony regarding the September 13 call to Bacardi which was rejected by the arbitrator. It has been repeatedly held that an arbitrator's findings on credibility are seldom disturbed unless they find absolutely no support in the evidence. *See Intern. Broth. of Firemen v. Great Northern Paper,* 765 F.2d 295, 296 (1st Cir.1985).

We find no error in the arbitrator's interpretation of the express terms of the collective bargaining agreement regarding the pre-arbitration requirements given the lack of evidence of a different shop practice or in his conclusions on the consequences of failing to follow the pre-arbitration requirements. *See Unión de Tronquistas v. Trailer Marine Transport,* 556 F.Supp. 120, 122 (D.P.R.1983) *and cases there cited.* There was no evidence presented to the arbitrator in support of plaintiff's conclusory sworn statement that it was the custom and practice of the industry to permit employees a "reasonable time" to return to work after a strike. On the contrary, the evidence showed that a specific date was fixed to return to work immediately after the strike ended, that considerable efforts were made to notify all employees and that even the Union cooperated in this. In any event, the Union's position teeters on the absurd. It is unreasonable to expect that after a prolonged strike which finally culminated in a collective bargaining agreement, at a time when an employer is justifiably interested in quickly resuming operations with a full work force to compensate for the time and productivity lost, employees will be allowed to return to work at their leisure pursuant to an undefined, "reasonable" period.

Plaintiff also failed to present evidence and cannot now question as an erroneous interpretation of the collective bargaining agreement, the arbitrator's finding that, in terms of procedural arbitrability, the five-day term was fatal. *See Auto., Pet. Allied Indus. v. Town & Country Ford,* 709 F.2d 509, 511–514 (8th Cir.1983) *and cases there cited.*

The union claims that the arbitrator failed to determine whether the Union was officially notified with copy of the September 12, 1984 ultimatum letter. The arbitrator concluded that this finding was unnecessary for, under the collective bargaining agreement, the employee did not have to depend on the Union to file a complaint. This conclusion is supported by the evidence and by the terms of the collective bargaining agreement. *Bettencourt,* 560 F.2d at 1049–50. The evidence presented by the Union to establish a shop practice of notice of letters of dismissals was conclusory and sketchy. Although Mr. Rivera testified that a copy of this particular letter was sent to the Union and that they usually sent copies of such letters to the Union, he could not determine whether copies of similar letters were always notified to the Union. The Union never demonstrated that these letters were usually accompanied or followed by a formal letter of dismissal which was then notified to it. In any event, *no* evidence was presented to support the added tier in plaintiff's argument; that according to custom and practice only until such a letter or action was notified to the Union did the five-day period start to run. A much stronger showing by the Union before the arbitrator is required to set aside the arbitrator's conclusions on this. His conclusions were based on a reasonable reading of the clear terms of the collective bargaining agreement related to the pre-arbitration stage and on the unequivocal terms of the September 12 letter. *See Trustees of Boston Univ. v. Boston Univ. Chapter,* 746 F.2d 924, 927 (1st Cir. 1984). Since the collective bargaining agreement precludes the arbitrator from modifying or altering its terms, if he had found such a notification pre-requirement to exist on the sketchy evidence presented and despite the clear language of the agreement, the employer would have had good grounds to claim that his decision did not "draw its essence" from the collective

bargaining agreement. *Id.* at 926; *Hoteles Condado Beach, etc. v. Unión de Etc.,* 763 F.2d 34, 41 (1st Cir.1985). There being no reason to disturb the arbitrator's interpretation of the collective bargaining agreement, his conclusions will not be set aside.

We reach defendant's argument that its costs and attorney's fees should be imposed on plaintiff[2] because of its attempt to vacate the arbitrator's decision on these shaky grounds, even though it had agreed that the arbitration results would be final and binding. Defendant points to a series of cases in our circuit where some type of penalty has been imposed on frivolous labor arbitration cases. *See Trustees of Boston Univ.,* 746 F.2d at 927 (circuit court did not disturb lower court's finding that no attorney's fees should be imposed but double costs of appeal were taxed); *idem; N.L.R.B. v. Catalina Yachts,* 679 F.2d 180, 182 (9th Cir.1982); *Local Union No. 251 v. Narragansett Improvement Co.,* 503 F.2d 309, 313 (1st Cir.1974) (costs plus attorney's fees awarded to union appellee for frivolous appeal); *Unión de Trabajadores v. Union Carbide,* 440 F.Supp. 310, 312 (D.P.R.1977) (costs and attorney's fees imposed on union for obstinacy). In *Trustees of Boston Univ.,* and *Courier-Citizen v. Boston Electrotypers Un. No. 11,* 702 F.2d 273, 282 (1st Cir.1983), the First Circuit cited with approval a Fifth Circuit case, *International Ass'n. of Machinists v. Texas Steel,* 639 F.2d 279 (5th Cir.1981) that reversed a district court decision not to award attorney's fees to the victorious union in an action to enforce an arbitration award. *See also Intern. Union of Electrical, Radio and Machine Workers v. Peerless Pressed Metal Corp.,* 489 F.2d 768 (1st Cir.1973). The Fifth Circuit Court noted: "federal labor policy favoring voluntary arbitration dictates that when a refusal to abide by an arbitration decision is without justification, and judicial enforcement is necessary, the court should award the party seeking enforcement reasonable costs and attorney's fees incurred in that effort."

*Id.* at 284. *See also Intern. Ass'n. of Machinists v. Texas Steel Co.,* 538 F.2d 1116, 1121–22 (5th Cir.1976) *and cases there cited. Compare F.F. Instrument v. Unión de Tronquistas,* 558 F.2d 607, 610 n. 3 (1st Cir.1977) (Puerto Rican rules of obstinacy in awarding attorney's fees have no place in a section 303 of the National Labor Relations Act, 29 U.S.C. section 187 action; attorney's fees in such actions only awarded upon a showing of bad faith, vexatious, wanton or oppressive litigation per the *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), "American rule".) The meaning of the "without justification" requirement has not been explored but these cases have tied in this rule with the national labor policy of promoting finality in labor-management arbitration and have emphasized the need for such a rule to avoid "frivolous and wasteful judicial challenges to conscientious and fair arbitration decisions." *Texas Steel,* 538 F.2d at 1122. However, in *Nat. Ass'n. of Letter Carriers v. U.S. Postal Serv.,* 590 F.2d 1171 (D.C. Cir.1978) the District of Columbia Circuit Court of Appeals found that the doctrine of awarding attorney's fees in certain section 301 cases, as discussed in *Local No. 149 I.U., U.A., A. & A.I.W. v. American Brake Shoe Co.,* 298 F.2d 212 (4th Cir.), *cert. denied,* 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276 (1962), must be tempered by the Supreme Court's reaffirmation of the "American rule" in *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) where the Court said that, absent an authorizing statute or contractual stipulation, a successful litigant is not entitled to attorney's fees, unless the losing party "acted in bad faith, vexatiously, wantonly or for oppressive reasons" *id.* at 258–59, 95 S.Ct. at 1622. The court emphasized that the line of cases following *American Brake* which had based the award of attorney's fees on the court's inherent equitable powers had to be

---

**2.** Defendant withdrew a request for imposition of attorney's fees and costs on plaintiff's attorney pursuant to 28 U.S.C. § 1927.

reconciled with the Supreme Court's restatement of when and how, in the absence of congressional authority, a federal court could draw from its inherent powers to impose attorney's fees on a losing litigant. *Letter Carriers*, 590 F.2d at 1179 n. 11. It also mentioned that another line of 301 cases had reconciled the attorney's fees doctrine with the *Alyeska* general ruling and implied that the concern with awarding attorney's fees in order to effectuate national labor policy was improper under the *Alyeska* standard, *Letter Carriers*, 590 F.2d at 1176 n. 5. The First Circuit has not referred to this distinction in recent post *Alyeska* cases where the attorney's fees doctrine for 301 cases are cited. In any event, regardless of whether our circuit maintains a special exception for attorney's fees in 301 labor cases apart from the general guidelines of *Alyeska*, where national labor policy concerns are taken into consideration, we believe that in this case, where the argument for attorney's fees is based on the Union's filing a frivolous action and no special labor policy concern has been advanced by the Union, the distinction is noted merely for purposes of presenting the framework for the discussion for, as the court stated in *Letter Carriers*, frivolous or "without justification" 301 suits may fall within the "vexatious" exception announced in *Alyeska/Letter Carriers*, 590 F.2d 1178–79 n. 11. In *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) the Supreme Court defined the term vexatious, within the meaning of the statutory standard for the payment of attorney's fees in a Title VII action, as actions that are "frivolous, unreasonable, or without foundation, even though not brought in bad faith" *id.* at 421, 98 S.Ct. at 700.

■ The arbitrator's findings in this case were based on an interpretation of the collective bargaining agreement and on a credibility assessment. The arbitrator's conclusions had ample support and were clearly within his jurisdiction. The Union's justification for bringing suit, that it was not challenging the arbitrator's credibility findings but only his interpretation of the cut-off date and the lack of a finding as to whether the union was notified, must be seriously questioned since during the arbitration proceedings these matters were hardly elaborated, much less, supported by evidence. The alleged reason for suing is also contrary to the allegations of the complaint which indicate that "[t]he arbitrator exceeded his authority by giving credibility only to the words of an employer director of labor relations ... [t]he arbitrator did not give credibility to the evidence presented by the Union...." paragraph 8(e) complaint filed May 28, 1985. The real reason for the Union to challenge the arbitrator's solid findings seems to have been to take a wild shot at the arbitrability ruling, resting on the equity underpinnings it considered the case could superficially have, in the hope that a court set it aside, that the grievance be assigned to another arbitrator, and that plaintiff be given a second chance to persuade a new arbitrator on the key issues of credibility on which the merits of the grievance rested. Federal courts are not designed for such jugglery. Attorney's fees are imposed on plaintiff for filing this frivolous suit.

Plaintiff has not challenged the amount of attorney's fees requested. However, we believe $10,000 is excessive for this litigation was brief and basically required an answer to the complaint and the motion for summary judgment. That motion reveals a thorough research and a comprehensive exposition of the facts which have undoubtedly assisted us in reviewing the case. We consider that defendant reasonably spent sixty (60) hours of professional time to defend this frivolous suit. Defendant shall file two sworn statements by reputed labor attorneys from another law firm stating the usual hourly fee in the community that is charged to defend similar cases. Said sworn statements shall be filed accompanied by motion no later than May 30, 1986. The court will then determine the reasonable hourly fee and issue the award. Costs are also awarded to defendant pursuant to the above discussion and, in addition, ac-

cording to Rule 54(d) F.R.Civ.P. Defendant shall file with the sworn statements its bill of costs. Judgment shall be entered accordingly.

SO ORDERED.