**William E. SMITH, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Defendant.**

**Civ. A. No. 76–2311.**

United States District Court, District of Columbia.

Jan. 28, 1978.

As Amended Jan. 31, 1978.

Roma J. Stewart, Washington, D.C., for plaintiff.

David H. Shapiro, Asst. U. S. Atty., Washington, D.C., for defendant.

### MEMORANDUM

GASCH, District Judge.

This is an action for award of attorneys' fees as a result of successful resolution of a complaint of discrimination against the defendant. Plaintiff is a black employee of

---

the Food and Drug Administration. In May, 1975 he applied for the vacancy of GS–13 Biologist, and shortly thereafter the selecting official cancelled the vacancy announcement. Plaintiff filed a complaint with the agency alleging that the circumstances of that cancellation constituted racial discrimination. The agency investigated and issued a proposed disposition finding no discrimination.

Plaintiff then requested a hearing before the Civil Service Commission (CSC). As a result of that hearing, the complaints examiner upheld plaintiff's charge of racial discrimination and recommended that plaintiff be retroactively promoted. On November 17, 1976, the agency adopted that recommendation. By December 16, 1976, defendant had taken the necessary personnel actions to effectuate the retroactive promotion. Apparently plaintiff was not informed of this. Consequently on December 17, 1976, he filed his complaint in this Court seeking enforcement of the CSC's recommendation. Soon thereafter plaintiff was promoted, and so on February 9, 1977, he filed an amended complaint asking only for the award of attorneys' fees and costs.[1]

It is clear from the procedural history of this case that the filing of this action in court did not serve as a catalyst in successfully resolving the discriminatee's complaint. The Court thus faces the issue of whether Title VII of the Civil Rights Act of 1964[2] permits an award of attorneys' fees to a party who prevails in his complaint of discrimination at the administrative level and who receives there the complete relief requested. Although this circuit specifically left open this issue in its recent decision of *Parker v. Califano*, 561 F.2d 320 (D.C. Cir. 1977), the holding and opinion in that case are of significant importance to this Court's resolution of it. Accordingly, it is necessary at the outset to discuss that case briefly in order to establish the foundation on which this decision rests.

In *Parker*, the plaintiff alleged that she had been discriminated against on the basis of her race and sex. The agency's Equal Employment Office investigated the charge. It concluded that discrimination had occurred and recommended that she be promoted to GS–13. The agency promoted her to GS–11 and assured her that a full promotion would soon follow. Subsequently, however, the agency issued its final decision, which stated that the investigative report would be disregarded and no further remedial action would be taken. Plaintiff then filed suit. Two months later the agency issued a new decision confirming the finding of discrimination and directing that plaintiff be retroactively promoted to GS–13 and be awarded back pay. The district court approved the settlement and awarded plaintiff attorneys' fees for services rendered at both the administrative and judicial levels. *Id.* at 321–22.

The award of attorneys' fees was the only issue on appeal. Based on "the statutory language, legislative history, case law, and relevant policy concerns," the court of appeals held that "a federal District Court has discretion to award attorneys' fees that include compensation for legal services performed in connection with related administrative proceedings." *Id.* at 321; *accord, Johnson v. United States*, 554 F.2d 632, 633 (4th Cir. 1977).

In urging reversal of the award, one of the arguments made by the defendant therein was that approving attorneys' fees in those circumstances would create an anomaly:

> [A] Title VII plaintiff who is unsuccessful in the administrative proceedings but succeeds in court will be able to recoup attorneys' fees for all legal services rendered, while a plaintiff who is successful at the administrative level will not be able to recoup any attorneys' fees.

and the defendant denied it on February 21, 1977.

---

1. Plaintiff represented himself during the initial part of the administrative proceeding, so that the complaint filed with the agency did not contain a request for attorneys' fees. That request was first made on February 3, 1977,

2. 42 U.S.C. §§ 2000e to 2000e–17 (1970 & Supp. V 1975).

*Id.* at 330 n. 24. The court of appeals first noted that it was premature to consider that question because on the facts before it the plaintiff had to file the action in court in order to remedy the discrimination she encountered. *Id.* Nevertheless, the court went on to repeat two suggestions offered by the plaintiff therein as to how that anomaly could be resolved:

> The first possibility is to allow the plaintiff to come to court on the single issue of whether, and in what amount, attorneys' fees are to be awarded. The second is for the agency itself to award fees pursuant to its authority under § 717(b), 42 U.S.C. § 2000e–16(b), to "enforce the provisions [prohibiting employment discrimination] *through appropriate remedies,* including reinstatement or hiring of employees with or without back pay, *as will effectuate the policies of this section* . . . ."

*Id.* (emphasis added by the court of appeals). The court, of course, qualified these suggestions by stating that it was expressing no opinion on the merits of either.[3] Such a determination is the task this Court now addresses.

First for consideration will be the possible authority of the agency to award attorneys' fees since a complainant must raise his claim there before coming to Court. Moreover, if the agency does have this authority, it will eliminate the necessity to come to court when this is the only issue remaining to be resolved. The defendant has correctly noted that whether or not Title VII confers such authority in the agency depends on an interpretation of the Supreme Court's decision in *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

Under the American Rule, the prevailing litigant usually is not entitled to recover reasonable attorneys' fees from the loser. In *Alyeska,* the Court had to determine whether the judiciary could "fashion a *far-reaching* exception to this" Rule by using its equitable power to award attorneys' fees on the theory that the prevailing party had functioned as a " 'private attorney general.' " *Id.* at 241, 247, 95 S.Ct. at 1616 (emphasis added). In holding that such an exception could not be created, the Court stated that "it would be inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation in [this] manner and to [this] extent . . ." *Id.* at 247, 95 S.Ct. at 1616. The Court further noted that Congress has not

> extended any roving authority to the Judiciary to allow counsel fees . . . whenever the courts deem them warranted. What Congress has done, however, . . . is to make specific and explicit provision for the allowance of attorneys' fees under selected statutes · granting or protecting various federal rights.

*Id.* at 260, 95 S.Ct. at 1623.

■ This case is significantly distinguishable from the facts in *Alyeska.* There the Court was concerned that the exception advanced would permit courts to pick and choose among situations in which counsel fees would be awarded depending on their sympathies with the party, statute, or public policy involved. *Id.* at 269, 95 S.Ct. 1612. Title VII is a statute in which Congress already has specifically provided for an award of attorneys' fees. Although the expression of that exception is contained in the remedial authority of the courts,[4] the rights protected by the courts are the very

---

3. Although expressing no opinion here, it does appear that the court gave indirect approval to these suggestions in the companion case to *Parker,* decided the same day, *Foster v. Boorstin,* 561 F.2d 340 (D.C. Cir. 1977). In *Foster,* the court noted that an argument could be made that its decision there would create the same anomaly as had been suggested in *Parker.* The court responded, however, by saying: "For reasons stated in *Parker* . . . at n. 24, we believe this potential anomaly is far from inevitable." *Id.* at 343 n. 8.

4. That section provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k) (1970), *made applicable by* 42 U.S.C. § 2000e–16(d) (Supp. V 1975).

same rights the agencies are to protect. Thus, finding authority for the agency also to award counsel fees to one who prevails at the administrative level would not create a "far-reaching" new exception to the Rule. Rather, it would make the existing exception applicable regardless of the stage at which that federal right is protected. In spite of this significant factual distinction, defendant nevertheless contends that as a result of *Alyeska*, the particular section authorizing the agency to grant relief from discrimination must specifically include the magic words "attorneys' fees" or else they are not included within its arsenal of remedies. This Court disagrees. Although the Congressional intent to include attorneys' fees must be clear, it may be expressed in terms other than the use of those specific words.

■ Several courts have emphasized the important role an attorney may play during the administrative phase of a Title VII proceeding.[5] The Supreme Court has emphasized that one of the central policies of Title VII is to make whole the person who has been subjected to discrimination,[6] and an award of attorneys' fees is a significant means of accomplishing that.[7] Thus, although Title VII does not expressly state that an agency may award attorneys' fees, it does state that the agency is to enforce the Act "through appropriate remedies . . . as will effectuate the policies of this section . . . ." 42 U.S.C. § 2000e–16(b) (Supp. V 1975). Because the "make-whole" concept is one of those policies, this provision can be read to permit the agency to award attorneys' fees, thereby making whole one who prevails before it.

In another recent decision from this circuit, *Fitzgerald v. United States Civil Ser-* vice *Commission*, 180 U.S.App.D.C. 327, 554 F.2d 1186 (1977), the sole question for review was whether section 14 of the Veterans' Preference Act of 1944 authorized the Civil Service Commission to award attorneys' fees to a wrongfully discharged employee entitled to protection under the Act. That section directs the agency guilty of the wrongful discharge to take "the corrective action that the Commission finally recommends." 5 U.S.C. § 7701 (1976). The court held that this did not include authority to award attorneys' fees. *Id.* at 1188.

In reaching that decision, the court noted that section 14 not only lacked any specific reference to attorneys' fees but also that it made no provision for any other kind of monetary relief. The court then rejected the district court's reasoning that in the absence of contrary legislative history the section should be interpreted broadly to promote the goals of the Act. *Id.* at 1188–89. The court's primary concern in *Fitzgerald* was that there had been no express waiver of sovereign immunity under that Act for an award of money damages against the Government. Title VII, however, does contain such a waiver.[8] The court went on to say in *Fitzgerald* that even assuming there had been a waiver of sovereign immunity, it did not necessarily follow that it extended to an award of attorneys' fees "unless Congress [had] clearly indicated that it should." *Id.* at 1189. In a footnote the court suggested that this indication might come from "particularly clear legislative history." *Id.* at 1189 n. 8.

With respect to the specific remedial authority of the agency under Title VII a portion of the legislative history indicates that by authorizing the agency to take any

---

5. *E. g., Parker v. Califano*, 561 F.2d 320, 332–33 (D.C. Cir. 1977); *Johnson v. United States*, 554 F.2d 632, 633 (4th Cir. 1977); *McMullen v. Warner*, 416 F.Supp. 1163, 1167 (D.D.C.1976). *See also Brief Amicus Curiae for the NAACP Legal Defense and Educational Fund, Inc.* at 11–17.

6. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

7. *See Parker v. Califano*, 561 F.2d 320, 330–31 (D.C. Cir. 1977); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 716 (5th Cir. 1974); *Lea v. Cone Mills Corp.*, 438 F.2d 86, 88 (4th Cir. 1971).

8. *See Parker v. Califano*, 561 F.2d 320, 325 n. 15 (D.C. Cir. 1977). The agency has specific authority to grant retroactive promotions and back pay. 42 U.S.C. § 2000e–16(b) (Supp. V 1975).

other remedial action consistent with the purposes of the Act, the intent was that "any remedy needed to fully recompense the employee for his loss, both financial and professional" would be appropriate.[9] A broader interpretation of the agency's authority could not have been expressed, and from the clear acknowledgement by Congress elsewhere in the legislative history of the importance of awarding attorneys' fees, including those for services at the administrative level,[10] it must be concluded that this mandate to the agency provides authority for it to make such awards.[11]

This conclusion is consistent with one of the purposes in allowing awards of attorneys' fees under Title VII, which is to reduce the hardship on a complainant in bringing a meritorious suit. *Parker v. Califano*, 561 F.2d at 334. Were an award of fees not available if plaintiff succeeded before getting to court, he might not think his rights were worth the cost of vindicating them. *Id.* He would have to hope his claim is good enough to prevail, but not so good that he would prevail too early.

Moreover, this conclusion supports the interrelatedness of the administrative and judicial enforcement mechanisms under Title VII emphasized by the Supreme Court in *Brown v. GSA*, 425 U.S. 820, 829–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Were the agencies not authorized to award attorneys' fees, the balance of this interrelatedness would be severely upset. The section granting federal courts jurisdiction in Title VII cases provides that a complainant may come to court either 30 days after notice of final action by the agency or Civil Service Commission or after 180 days from filing the charge of discrimination if no final action has occurred. 42 U.S.C. § 2000e–16(c) (Supp. V 1975). Thus, a party who knew he could recover all fees once he got to court but would recover none if he prevailed at the administrative level would rush to court after the 180 days had passed rather than wait for a final agency decision.[12] The utility of the administrative proceeding also might be diminished absent this authority in the agencies. The complainant and his counsel might conclude that it is not cost-efficient to invest the time necessary at the administrative level to develop his case properly. Thus, the administrative proceeding might be relegated to a pro forma exhaustion step decreasing the likelihood that claims could be resolved without resorting to the courts. It might also mean that the administrative record, which can be admitted as evidence in court, would be less complete and thus of less assistance in conserving the courts' time in suits that are filed. *See Parker v. Califano*, 561 F.2d at 334.

Having concluded that the agency has authority to award attorneys' fees to complainants who prevail before it, the Court need not address the other alternative raised in the *Parker* opinion: whether, absent any such authority in the agency, the Court could still exercise jurisdiction and itself enter an award of attorneys' fees when that is the sole issue for consideration. The case is therefore remanded to the agency for it to exercise this authority it thought was lacking. Should the plaintiff subsequently feel aggrieved because of the

**9.** When Senator Williams presented the Conference Report to the Senate, he included this supplementary interpretation of the agency's authority. Aware of that interpretation, the Senate adopted the Conference Report with 62 yea votes, 10 no votes, and 28 senators not voting. 118 Cong. Rec. 7169–70 (1972).

**10.** An extensive analysis of the legislative history of Title VII and the authority to award attorneys' fees is contained in an appendix to this circuit's opinion in *Parker v. Califano*, 561 F.2d 320, 333–39 (D.C. Cir. 1977).

**11.** *Contra, Fischer v. United States Dep't of Transportation*, 430 F.Supp. 1349, 1352 (D.Mass.1977). The court in *Fischer*, however, did not have the *Parker* holding as guidance on this issue. In fact, it specifically reached a conclusion contrary to that in *Parker. Id.*

**12.** *See Foster v. Boorstin*, 561 F.2d 340, 343 n. 8 (D.C. Cir. 1977). Indeed, plaintiff herein could have done just that. Instead, he elected to await the final agency decision, which, when issued, agreed that he had been discriminated against and granted him all relief except for attorneys' fees.

535

agency's determination as to the amount of the award, he may then seek judicial review of that determination.