**Joseph B. KENNEDY, Plaintiff,**

v.

**Cecil D. ANDRUS et al., Defendants.**

**Civ. A. No. 78–0427.**

United States District Court,
District of Columbia.

Oct. 11, 1978.

Joseph B. Kennedy, pro se.

Stephen S. Cowen, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This is an action for award of attorneys' fees incurred at the administrative level in a successful effort to remove a reprimand from plaintiff Joseph B. Kennedy's personnel file. Plaintiff is a federal administrative law judge with the Department of the Interior, Office of Hearings and Appeals. On March 17, 1976, Acting Secretary of the Interior Kent Frizzell officially reprimanded plaintiff and ordered that a copy of the reprimand be placed in his personnel file. The basis of the reprimand was that plaintiff had issued an administrative decision and assessed penalties against a coal company contrary to an apparent agreement between the Department and the United States District Court for the Eastern District of Kentucky to stay all administrative proceedings pending a court ruling on a motion by the company for injunctive relief.

Although plaintiff could have challenged the reprimand through departmental griev-

ance procedures,[1] on June 10, 1976, he wrote a letter to Under Secretary Frizzell setting out the reasons for his action and requesting that the reprimand be expunged from his file according to the provisions of section 3 of the Privacy Act.[2] On June 30, 1976 Under Secretary Frizzell refused to remove the reprimand, alleging that the Privacy Act does not provide for collateral attack on or review of agency or judicial decisions. As a matter of "administrative discretion," however, Mr. Frizzell considered the claims made by plaintiff and found them to be without merit.

Plaintiff filed an appeal of this refusal with the Secretary of the Interior Thomas Kleppe, in accord with Privacy Act review procedures.[3] On August 11, 1976, Secretary Kleppe notified plaintiff that the Department continued to believe that a request for amendment under the Privacy Act was not the proper way to review the reprimand, but he stayed any consideration of the "Privacy Act appeal" pending receipt of a formal opinion from the Attorney General on the following question:

> May the head of an agency of the Federal Government issue a reprimand to an Administrative Law Judge employed in his agency without initiation of proceedings before the Civil Service Commission?

Counsel·for plaintiff submitted a brief to the Attorney General in support of the independent status of Administrative Law Judges. On January 18, 1977, Attorney General Levi issued a formal opinion[4] in which he ruled that plaintiff's action in issuing his administrative decision constituted a proper exercise of "APA adjudicatory responsibilities" and that "the agency reprimand with respect to that decision was improper." As a result of this opinion, on February 16, 1977, the new Secretary of the

Interior, Cecil D. Andrus, directed that copies of the reprimand be removed from plaintiff's files.

In obtaining this result, plaintiff incurred attorneys' fees and expenses of $6,000.00, of which $5,000.00 was paid by the Federal Administrative Law Judges Conference (FALJC) under a resolution of support. On February 15, 1978, plaintiff, on behalf of the FALJC and for himself, requested reimbursement from the Secretary of the Interior of attorneys' fees and costs incurred in the successful effort to expunge the letter of reprimand. On March 10, 1978, plaintiff Kennedy and the FALJC filed this civil suit, claiming that the Privacy Act authorizes an agency to award attorneys' fees and costs to a complainant who has substantially prevailed before it or, alternatively, that the Act authorizes district courts to order such payment whether or not the agency has authority. The Department of the Interior denied plaintiff's request for attorneys' fees on May 12, 1978. The matter is presently before the Court on cross-motions for summary judgment.

As an initial question, it is necessary to determine whether the Privacy Act can be invoked to expunge a reprimand issued by a superior and inserted in a federal employee's personnel file. The Privacy Act of 1974,[5] which establishes procedures for correcting records maintained by the federal government, provides that upon petition by an individual to whom a record relates, an agency must amend any portion of the record which is "not accurate, relevant, timely, or complete." 5 U.S.C. § 552a(d)(2)(B). Perhaps the most common use of this provision is to expunge inaccurate information, such as malicious gossip or unsubstantiated allegations, obtained and recorded during

---

1. 5 C.F.R. § 771 (1977).

2. 5 U.S.C. § 552a(d)(2) (1976).

3. *Id.* § 552a(d)(2)(B)(ii).

4. 43 Ops.Atty.Gen. 9 (1977).

5. 5 U.S.C. § 552a (1976). The Act requires federal agencies, within 10 days of receipt of a request to correct an agency record, must ac-

knowledge the request and promptly correct the record or notify the requesting party of its refusal to do so. *Id.* § 552a(d)(2)(A), (B). A party who disagrees with an agency's refusal to amend can request review of such decision by the head of the agency and if the reviewing officer also refuses to amend the record, he can seek judicial review of the final agency decision. *Id.* §§ 552a(d)(2)(A), (g)(1)(A).

routine investigations. Defendants argue that this section may not be invoked to attack collaterally a final agency decision such as the reprimand here if the aggrieved party had an opportunity to challenge it in an agency proceeding.

The OMB guidelines on implementation of the Privacy Act state that its provisions for amending records "are not designed to permit collateral attack upon that which has already been the subject of a judicial or quasi-judicial action." 40 Fed.Reg. 28948, 28958 (July 9, 1975). As an example, the guidelines note that these provisions do not permit an individual to challenge a conviction for a criminal offense received in another forum or to reopen the assessment of a tax liability. In these situations, an individual would only be able to challenge the fact that the conviction or liability had been inaccurately recorded in his records. *Id.*

■ Defendants claim that once the time for filing of a grievance had run, the reprimand in effect became a final agency action and therefore was not subject to review under the Privacy Act. In addition, they emphasize that even though plaintiff's letter was denominated a request under the Privacy Act, the agency never accepted the letter for processing under Privacy Act procedures. In response, plaintiff states that the legislative history and interpretive guidelines accompanying the Privacy Act strongly suggest an intent to make it the exclusive, preemptive administrative remedy for a refusal to amend, correct, or expunge an agency record. Although this may be true, it does not follow that the Privacy Act was intended to supplant or circumvent established grievance procedures available to federal employees. The Privacy Act Guidelines clearly forbid collateral attack in the case of final judicial or quasi-judicial actions and the same considerations would seem to apply to agency

personnel actions, such as the reprimand here, for collateral attack under the Privacy Act could undermine the effectiveness of agency grievance systems. It is not necessary to decide the cross-motions for summary judgment on this ground, however, for the Court finds that even if the Privacy Act is an appropriate mechanism for challenging the reprimand, plaintiff is not entitled to receive attorneys' fees for expenses incurred at the administrative level.

■ Under the American Rule, the prevailing litigant usually is not entitled to recover reasonable attorneys' fees from the loser. The Supreme Court has recognized that this rule may be modified by statute, but that such a statute must contain "specific and explicit provisions for the allowance of attorneys' fees . . . ."[6] The need for specificity and explicitness is increased when sovereign immunity is involved, for an express waiver is required before attorneys' fees can be assessed against the federal government.[7] Plaintiff argues that the Privacy Act provides such a waiver and authorizes the agency to pay attorneys' fees to complainants who substantially prevail before it at the administrative level. In support of this position, which appears to involve a question of first impression, plaintiff relies on *Smith v. Califano,* 446 F.Supp. 530 (D.D.C.1978), in which the court held that the Civil Service Commission had authority to award attorneys' fees to complainants who prevailed at the administrative level in suits brought under Title VII of the Civil Rights Act of 1964.[8]

In *Smith* the court stated: "Although the Congressional intent to include the attorneys' fees must be clear, it may be expressed in terms other than the use of those specific words." *Id.* at 533. Although Title VII does not expressly allow an agency to award attorneys' fees, it does authorize the agency to enforce the Act "through appro-

---

**6.** *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 260, 95 S.Ct. 1612, 1623, 44 L.Ed.2d 141 (1975).

**7.** *E. g., Fitzgerald v. Civil Service Comm'n,* 180 U.S.App.D.C. 327, 330, 554 F.2d 1186, 1189 (1977) (attorney's fees could not be assessed

against government in Veteran's Preference Act case because Congress had not expressly waived sovereign immunity).

**8.** 42 U.S.C. §§ 2000e to 2000e–17 (1970 & Supp. V 1975).

priate remedies . . . as will effectuate the policies of this section . . . ." 42 U.S.C. § 2000e–16(b) (Supp. V 1975). The court in *Smith* concluded that because the "make-whole" concept is one of the policies of Title VII, this provision can be read to permit the agency to award attorneys' fees, thereby making whole the party who prevails before it. 446 F.Supp. at 533.

Plaintiff suggests that an analogous authority for agency award of attorneys' fees is provided by section 552a(f)(4) of the Privacy Act, which states that each agency must establish procedures for expeditious review of requests for amendment and for "whatever additional means may be necessary for each individual to be able to exercise fully his rights under this section." Plaintiff argues that agency reimbursement of attorneys' fees furthers the full and effective enforcement of the federal rights conferred under the statute by permitting recovery for expenditures of time and money incurred in vindicating those rights. However, as plaintiff recognizes, recovery of attorneys' fees would be a remedial measure and the specific language of the Privacy Act does not authorize the agency to undertake remedial action. It is the opinion of the Court that section 552a(f)(4) does not reflect an express congressional intent to provide remedial measures and consequently, it cannot be the basis of agency authority to award attorneys' fees.

■ Alternatively, plaintiff claims that the Privacy Act authorizes this Court to order payment of attorneys' fees whether or not the agency is authorized to award such fees. The Privacy Act does contain an attorneys' fees provision which states:

> The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed.

5 U.S.C. § 552a(g)(2)(B). The paragraph referred to in this provision is section 552a(g), which authorizes persons aggrieved to bring suit in district court to challenge agency decisions in Privacy Act requests. Although plaintiff argues to the contrary, the reference in this provision to civil suits and use of the terms "litigation costs" and "in any case" clearly suggests that court authority to award attorneys' fees is limited to those fees incurred in civil litigation and does not encompass fees for administrative proceedings.

This conclusion is strengthened by a comparison of the language of the Privacy Act attorneys' fees provision with that of Title VII, on which plaintiff relies as precedent for court authority to award attorneys' fees incurred at the administrative level. The Title VII attorneys' fees provision states:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs . . . .

42 U.S.C. § 2000e–5(k). In *Parker v. Califano,* 182 U.S.App.D.C. 322, 561 F.2d 320 (1977), the United States Court of Appeals for the District of Columbia Circuit interpreted the phrase "action or proceeding" to permit the award of attorneys' fees incurred at the administrative level under Title VII, noting that any other interpretation of the phrase would exclude the administrative proceedings that constitute such a central part of Title VII. *Id.* at 330, 561 F.2d at 328. The use of the disjunctive and the well-established principle that statutory language should be construed so as to avoid redundancy suggested to the court that more than civil litigation was included within the attorney's fee provision. *Id.* at 327, 561 F.2d at 325 & n. 16.

The contrast in the language employed in the two statutes is understandable in light of the different roles assigned to the administrative proceedings under each. In *Parker* the court of appeals noted that the administrative and judicial levels of Title VII were part of an integrated enforcement scheme created by Congress. *Id.* at 331, 561 F.2d at 329. Under this statute a government employee alleging discrimination is initially required to present his claim in a formal hearing procedure at the administrative level. 42 U.S.C. § 2000e–16(b), (c)

**244**

(Supp. V 1975). Because the agency is likely to be represented by an attorney at such hearings, the court reasoned that it was necessary to award attorneys' fees to complainant at this stage in order to ensure adequate representation on his behalf as well. 182 U.S.App.D.C. at 333–34, 561 F.2d at 332–33. In contrast, the administrative proceedings under the Privacy Act are informal and of a summary nature. When an individual files a request for amendment of records, the agency must act promptly on the request and there is no provision for formal hearings or presentation of evidence in which an individual is likely to be disadvantaged by the lack of an attorney's assistance. Although the legislative history accompanying the Privacy Act notes that the "advice of a friend, relative or attorney in inspecting or evaluating" a record maintained by an agency may be necessary for effective exercise of rights under the Act,[9] there is not the same well-established need for the assistance of counsel as there is under Title VII. Extensive participation by attorneys at the administrative level of Privacy Act proceedings also might prove incompatible with other requirements of the Act, such as the ten-day period in which the agency must respond to requests for amendment.[10] In light of the structure of administrative proceedings under the Privacy Act and the language of the attorneys' fees provision, which is addressed to civil suits reviewing administrative decisions, the Court concludes that it is without authority to award attorneys' fees incurred in administrative proceedings under the Privacy Act.

---

**9.** S.Rep.No.93–1183, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 6916, 6931.

**10.** 5 U.S.C. § 552a(d)(2)(A), (B) (1976).