**LATINO PROJECT, INC., Plaintiff,**

v.

**CITY OF CAMDEN, Melvin Primas, and William Hankowsky, Defendants.**

**Civ. No. 81–3429.**

United States District Court,
D. New Jersey.

Feb. 25, 1982.

Gregory H. Wheeler, Haddonfield, N. J., and Gilbert F. Casellas, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for plaintiff.

Michael J. DiCola, First Asst. City Atty., Camden, N. J., for defendants.

## OPINION

BROTMAN, District Judge.

Plaintiff, a non-profit civil rights litigation group, filed this action under 42 U.S.C. § 1988, seeking an award of attorney's fees for its work on behalf of two community organizations asserting a claim of discrimination in violation of Title VI of the Civil Rights Act of 1964. 42 U.S.C. § 2000d *et seq.* The matter is before the court on defendants' motion to dismiss the complaint, or in the alternative, for summary judgment. Plaintiff attached a number of exhibits to the complaint, and defendants submitted a number of exhibits with its brief in support of the motion. We will refer to these simply as the respective parties' exhibits. In addition, defendants submitted the supporting affidavit of defendant Hankowsky.

Plaintiff was retained by the Delaware Valley Hispanic Chamber of Commerce ("DVHCC") and the Puerto Rican Unity for Progress ("PRUP") in connection with their claims that the City of Camden discriminated against Hispanics in the distribution of federally funded Community Development Block Grant ("CDBG") funds. DVHCC and PRUP submitted proposals in February, 1980, to Camden's Department of Community Development. The Department rejected the proposals in April, 1980. (Plaintiff's Exhibits A, B and C). Plaintiff investigated the charge of discrimination and filed an administrative complaint on behalf of DVHCC and PRUP in May 1980 with the Newark area office of the Department of Housing & Urban Development ("HUD"). (Plaintiff's Exhibit D). By letter of July 10, 1980, defendant Hankowsky denied the charges made in the complaint. (Defendants' Exhibit 1 at 1a–3a). On August 19, 1980, the supervisor of HUD-Newark wrote a letter informing plaintiff's clients that he found no discrimination against Hispanics in the defendants' administration of the CDBG program. (Defendants' Exhibit 3 at 5a–8a). On September 10, 1980, plaintiff wrote HUD advising of its clients' intention to appeal and requesting an evidentiary hearing. (Defendants' Exhibit 4 at 9a–10a). By letter of October 1, 1980, HUD informed plaintiff that no procedures for such an appeal or hearing were available. (Defendants' Exhibit 5 at 11a). On Decem-

ber 11, 1980, DVHCC was awarded CDBG funds, based on a proposal submitted some time in the interim. On July 9, 1981, a PRUP proposal was approved for CDBG funding. On July 25, 1981, a second DVHCC proposal was approved for funding. (Hankowsky Affidavit ¶ 20). On October 15, 1981, plaintiff wrote to defendant Hankowsky, requesting $65,000 in attorney's fees under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. (Defendants' Exhibit 8 at 19a). On November 2, 1981, plaintiff filed the instant action seeking a fee award of $74,887.50, to be doubled under the *Lindy II* guidelines, *Lindy Brothers Builders Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3rd Cir. 1976), plus costs and reasonable attorney's fees incurred in prosecuting the instant action.

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (West Supp. 1981), as amended, reads as follows:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The purpose of the Act was to "give the Federal courts discretion to award attorney's fees to prevailing parties *in suits* brought to enforce the civil rights acts...." S.Rep.No.94–1011, 94th Cong., 2d Sess. 1, *reprinted in* [1976] 5 U.S.Code Cong. & Ad.News 5908 (emphasis added).

It is clear from the parties' briefs that they vigorously dispute the question of whether plaintiff's clients were "prevailing parties" under the Act, and the question of causation. These disputes, centering on the question of whether plaintiff's efforts were a material factor in bringing about the relief sought by DVHCC and PRUP's civil rights complaint, cannot be resolved in a summary manner. These are fact issues which can only be decided after a hearing of the relevant evidence, including testimony of the decisionmakers involved. We as-

sume that the presence of this factual issue led to plaintiff's decision to withdraw its cross-motion for summary judgment.

But this does not dispose of defendants' motion to dismiss the complaint, for the motion raises issues other than the question of causation. Even assuming that plaintiff's efforts were a cause of the ultimate receipt of the grants, and that the receipt of the grants constituted relief on the merits of their clients' civil rights claims, defendants urge that the complaint is nonetheless inadequate and that defendants are entitled to judgment as a matter of law. The two arguments that must be addressed are *first*, that there was no "action or proceeding" as those terms are used in the Act; and *second,* that an attorney does not have an independent cause of action in his own right under the Act. Rather, the Act contemplates an award to the client in connection with a civil rights cause of action.

Plaintiff has not provided the court with any authority under Section 1988 for an attorney's right to file an action on his own behalf to recover fees for the type of informal administrative work done here. Our own research has not disclosed any precedent for a claim of this kind.

■ We find that the complaint is deficient as a matter of law because there was no "action or proceeding" in pursuit of plaintiff's clients' Title VI claims. In our view, such action or proceeding is a necessary predicate to the application of the Act. Plaintiff relies heavily on the intent of Congress expressed in the legislative history and recognized by the courts that for purposes of the Act, "parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep. at 5, U.S.Code Cong. & Admin.News 1976, p. 5912, quoted in *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). It is quite true that the decisions establish that a civil rights plaintiff needn't achieve formal relief in the form of a final judgment after trial on the merits, nor succeed on every issue he has raised, in order to seek fees under the Act. *See Maher v.*

*Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Morrison v. Ayoob*, 627 F.2d 669 (3rd Cir. 1980); *Ross v. Horn*, 598 F.2d 1312 (3rd Cir. 1979), *cert. denied*, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978). But this does not mean that a party who never filed suit at all may obtain a fee award.

Plaintiff argues that its activity on behalf of PRUP and DVHCC constituted an administrative proceeding, and asserts that Section 1988 applies to administrative proceedings. As authority for recovering fees for administrative proceedings, plaintiff refers the court to cases decided under Section 706(k), the attorney's fee provision included in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980); *Sullivan v. Commonwealth of Pennsylvania*, 663 F.2d 443 (3rd Cir., 1981). Section 1988 was patterned on this and similar provisions, and the cases construing Title VII's provision have relied on Section 1988 cases.

In *New York Gaslight*, the plaintiff filed a federal action in pursuit of her Title VII claim while a state proceeding was pending. When she obtained final relief in state court, her federal claim was dismissed except for the request for attorney's fees. Although the question was not raised by the facts of that case, the Supreme Court did suggest that she would have been entitled to recover fees incurred for the state administrative and judicial proceedings even if she had not filed the action for relief on the merits, but had merely sought attorney's fees. The Court reasoned "It would be anomalous to award fees to the complainant who is unsuccessful or only partially successful in obtaining state or local remedies, but to deny an award to the complainant who is successful in fulfilling Congress' plan that federal policies be vindicated at the state or local level." 447 U.S. at 66, 100 S.Ct. at 2032. Agreeing that the fee award should not turn on the "unforeseeable fortuity" of filing a protective federal suit, the Court concluded "that § 706(f)(1)'s authorization of a civil suit in federal court encompasses a suit solely to obtain an award of attorney's fees for legal work done in state and local proceedings." *Id.*

The Court's reasoning and conclusion present a difficulty for plaintiff in the instant case, because there is no analogous provision in Title VI to Title VII's Section 706(f)(1) [42 U.S.C. § 2000e–5(f)(1)]. There is no peg upon which to hang authority for the filing of the instant action for fees alone. Furthermore, the Court's discussion in *New York Gaslight* was closely tied to the statutory scheme and goals of Title VII, which are not precisely the same as Title VI's. The mandatory administrative and state-referral procedures of Title VII have no analogy in Title VI. The *New York Gaslight* decision effectuates a system which is unique to Title VII. That system is an extensive administrative complaint processing and appeals procedure at both federal and state levels, which Congress established as a prerequisite to suit in federal court. In light of these special features of Title VII, which were the animating force behind the decisions cited by plaintiff, we do not find that these cases interpreting Title VII's attorney's fee provision are persuasive in the context of this case.

*Smith v. Califano*, 446 F.Supp. 530 (D.D. C.1978), also relied on by plaintiff, is not relevant here. The court there held that the administrative agency (the Civil Service Commission) which afforded plaintiff relief had the authority under Title VII to award attorney's fees for action at the administrative level. The alternative possibility, that of permitting the plaintiff to come to court on the single issue of whether attorney's fees are to be awarded, was not addressed by the court. 446 F.Supp. at 534.

*Sullivan v. Commonwealth of Pennsylvania, supra*, was decided in the context of a *lawsuit* filed by a party who obtained relief that was in part a result of the lawsuit. In *Sullivan*, a Title VII plaintiff was permitted to recover attorney's fees for services rendered in connection with matters other than

the suit itself, specifically, investigation and preparation used during arbitration between plaintiff's union (on her behalf) and her employer. The arbitration was successful and mooted her Title VII suit. The court of appeals stated repeatedly that the lawsuit filed by the attorney was a material factor in achieving relief through the arbitration proceeding. The court's summary of the case stated that "counsel's efforts *in prosecuting her Title VII suit* were a material factor in her ultimately obtaining the relief sought not in the *Title VII action* itself, but in an arbitration proceeding...." 663 F.2d at 445 (emphasis added). The court referred to plaintiff's "*case as a 'catalyst' for the vindication of her constitutional rights,*" at 448 (emphasis added), quoting *Staten v. Housing Authority*, 638 F.2d 599, 605 (3rd Cir. 1980), and pointed to "the causal link between the *civil rights suit* and the relief obtained...." 663 F.2d at 448.

In *Ross v. Horn, supra*, the court asked if certain new procedures (sought by plaintiff) "were implemented *as a result of this lawsuit....*" *Id.* at 1322. The *Sullivan* court quoted this and placed emphasis on the same words we have just emphasized. 663 F.2d at 448. Summarizing Supreme Court and Third Circuit decisions, the court of appeals in *Sullivan* characterized them as

> stand[ing] for the proposition that the crucial question under Sections 706(k) and 1988 is not whether a plaintiff *actually* prevailed in a Title VII or civil rights lawsuit, but whether the plaintiff may be *deemed* to have prevailed in the civil rights action because of the causal connection between the suit filed and the relief obtained.

663 F.2d at 450 (emphasis in original). Plaintiff in *Sullivan* was "*deemed* to have prevailed in her Title VII *lawsuit* because of its impact on and material contribution to, the ultimate relief she obtained." 663 F.2d at 451 (emphasis in original). In conclusion, the court stated its holding as follows:

> First, the plaintiff must be a "prevailing party"; i.e., the plaintiff must essentially succeed in obtaining the relief sought on

the merits. Second, the circumstances under which the plaintiff obtained the relief sought must be causally linked to the prosecution of the Title VII complaint, in the sense that the Title VII proceedings constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief.

663 F.2d at 452.

In view of these many references to a civil rights lawsuit, we do not believe that *Sullivan* entitles plaintiff to fees. The circuit court in *Sullivan* and *Ross* was faced with a party in an "action or proceeding" before the federal court, and plainly contemplated that the *lawsuit* was a significant factor in achieving plaintiff's goals.

Even if a party may obtain a fee award for administrative proceedings where he or she has never filed suit, plaintiff's complaint still must be dismissed. We agree with defendants that plaintiff's work on behalf of DVHCC and PRUP, as set forth in the complaint and exhibits, does not rise to the level even of administrative proceedings.

Under Title VI implementing regulations 24 C.F.R. § 1.1 *et seq.* (1981), HUD receives and investigates complaints charging discrimination in federally assisted programs within HUD's jurisdiction. "Any person who believes himself or any specific class of persons to be subjected to discrimination prohibited by this Part I may by himself or by a representative file with the responsible Department official or his designee a written complaint" within 180 days of the alleged discrimination. 24 C.F.R. § 1.7(b). The official is then to make a prompt investigation. 24 C.F.R. § 1.7(c). If the investigation discloses noncompliance, the official pursues informal resolution of the problem with the recipient of the federal funds. 24 C.F.R. § 1.7(d)(1). If unable to resolve the matter informally, formal administrative action is instituted against the recipient under 24 C.F.R. § 1.8; including, potentially, the reduction of funding and full hearing rights to the recipient to challenge such a reduction. 24 C.F.R. § 1.9 and 24 C.F.R.

§ 2.1 *et seq.* If the investigation does *not* indicate a Title VI violation, "the responsible Department official or his designee will so inform the recipient and the complainant, if any, in writing." 24 C.F.R. § 1.7(d)(2). If a formal hearing against the funds-recipient is conducted, the person who initially submitted the complaint pursuant to Section 1.7(b) "is not a party to the proceedings ... but may petition, after proceedings are initiated, to become an amicus curiae," and shall be advised of the time and place of the hearing. The status of amici curiae is set forth in Section 2.22. The point that we wish to emphasize is that, under HUD regulations, once a complaint is found to be without merit, the complainant has no right of appeal or review of the merits of the complaint.

In the instant case, plaintiff prepared for its clients a lengthy document constituting an informal administrative complaint. In accordance with HUD regulations, HUD investigated the matter. HUD then informed plaintiff's clients that it saw no foundation for the assertion that defendants had violated Title VI. When plaintiff demanded a hearing and appeal (with *no* statutory or regulatory authority for this demand), HUD informed plaintiff's clients that no such procedures existed.

Having submitted this complaint document and the letter to HUD on its clients' behalf, apparently in the belief that administrative hearings would result, plaintiff now demands $150,000 in fees for its part in this so-called "administrative proceeding." If this sequence of events can be called an "action or proceeding" as those words are used in the Act, then these words have lost all significant meaning and apply to virtually any work undertaken by an attorney. We do not believe that this was Congress' intent in enacting the Civil Rights Attorney's Fees Awards Act.

Defendants' second argument is that an attorney cannot seek fees on his own behalf. According to the plain language of the Act, the "party," *i.e.*, the client, is entitled to fees. There is no suggestion that an attorney may be the direct recipient of a fees award pursuant to the Act. *See Richards v. Reed,* 611 F.2d 545 (5th Cir. 1980). While defendants argue that the clients are "indispensable parties" under Rule 19, requiring dismissal under Fed.R.Civ.P. 12(b)(7), this is mistaken. Plaintiff need only join the clients pursuant to Fed.R. Civ.P. 17(a) to cure this error. Plaintiff has offered to amend the complaint to substitute its clients as plaintiffs, and the court would permit plaintiff to do so. However, because we have decided to dismiss the complaint on other grounds, no purpose would be served by amendment at this time.

For these reasons, defendants' motion to dismiss the complaint is granted.