**BROCKMANN INDUSTRIES, INC., and Karin T. Brockmann, Plaintiffs,**

**v.**

**CAROLINA SECURITIES CORPORATION and Mark A. Kronenfeld, Defendants.**

Civ. A. No. 3:87–2292–15.

United States District Court, D. South Carolina, Columbia Division.

Dec. 4, 1987.

Robert E. Freer, Jr., Robert Lee Muse, Barnett & Alagia, Washington, D.C., and Thomas P. Simpson, Law Offices of Kermit S. King, Columbia, S.C., for plaintiffs.

William C. Cleveland, Deborah K. Kneese, Haynsworth, Marion, McKay & Guerard, Charleston, S.C., for defendants.

## ORDER

HAMILTON, District Judge.

This matter is before the court on defendants' motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.Proc. The court has jurisdiction in that the parties are of diverse citizenship and the amount in controversy exceeds Ten Thousand and No/100 ($10,000.00) Dollars. 28 U.S.C. § 1332.

## FACTS

The plaintiffs are Brockmann Industries, Inc. and Karin T. Brockmann, whose husband, Juergen Brockmann, is the president of Brockmann Industries. Defendants are Carolina Securities Corporation and Mark Kronenfeld, an employee of Carolina Securities. It is undisputed that in August of 1986, Kronenfeld, on behalf of Carolina Securities, sold 5,000 shares of Westerbeke stock to Brockmann Industries and 2,000 shares of the same stock to Karin Brockmann, for which buyers paid Forty-five Thousand and No/100 ($45,000.00) Dollars and Eighteen Thousand and No/100 ($18,000.00) Dollars, respectively. The stocks steadily declined in value from the time of purchase and eventually became worth less than half of their purchase price.

Mr. Brockmann, who made the decision to purchase the Westerbeke stock on plaintiffs' behalf, requested that Carolina Securities rescind the entire transaction because of Mr. Kronenfeld's alleged misrepresentations of material facts regarding the Westerbeke stock and because of defendants' failure to provide plaintiffs with a preliminary prospectus until February 2, 1987, over five months after the purchase. Defendants declined Mr. Brockmann's request to rescind.

In February of 1987, Mr. Brockmann retained the law firm of Barnett & Alagia, which wrote defendants on March 3, 1987 demanding recission of the stock transaction. By letter dated April 8, 1987, defendants again declined to rescind the sale.

On June 10, 1987, plaintiffs' attorneys informed defendants' attorneys that they had just become aware that defendant Kronenfeld was not registered to sell securities in South Carolina, as required by statute,[1] at the time he made the sale to plaintiffs. In response to this revelation, defendants wrote to plaintiffs on June 16, 1987 and offered to rescind the sales by paying plaintiffs, in return for their stock, the full consideration each had paid and interest thereon at 6% per year from date of sale. Tracking the language of § 35–1–1530,[2] defendants extended their offers for thirty days.

By letter dated June 26, 1987, plaintiffs' attorneys, relying on § 35–1–1490,[3] demanded the attorneys' fees plaintiffs had incurred in obtaining defendants' offers to rescind. Defendants replied on July 1, 1987, and denied any legal liability for or obligation to pay plaintiffs' attorneys' fees. On July 15, 1987, plaintiffs accepted defendants' offers to rescind. Defendants thereafter issued plaintiffs' refund checks that included payment for interest due, and the checks were negotiated within a week.

By letter dated July 30, 1987, plaintiffs' attorneys made a final demand for pay-

---

1. S.C. Code Ann. § 35–1–410 (Law.Co-op.1987).

2. *See infra* page 432.

3. *See infra* pages 432–433.

ment of attorneys' fees, and defendants again declined to pay. Thereafter, plaintiffs filed this suit on August 28, 1987 for legal and equitable relief. Counts I, II, and III of the complaint allege violations of the South Carolina Uniform Securities Act (hereinafter "USA") based upon alleged fraudulent practices (§§ 35–1–1210 and 35–1–1220), sale of securities through an unregistered broker-dealer or agent (§ 35–1–410), and failure to provide a prospectus (§ 35–1–990). Count IV of the complaint alleges negligent misrepresentation, and Count V alleges negligence. All five counts request the same relief: (1) a judgment for attorneys' fees of Sixteen Thousand Six Hundred Forty-eight and No/100 ($16,648.00) Dollars incurred in obtaining defendants' offers to rescind and (2) attorneys' fees and costs in this action. In response to plaintiffs' complaint, defendants filed the instant motion to dismiss. Rule 12(b)(6), Fed.R.Civ.Proc.

### PARTIES' CONTENTIONS

In their memorandum in opposition to defendants' motion to dismiss, plaintiffs assert essentially three bases for attorneys' fees. First, plaintiffs contend that § 35–1–1490 of the USA entitles them to attorneys' fees in a case such as this. Defendants argue, however, that § 35–1–1530 precludes recovery of attorneys' fees under the USA when the seller offers to rescind before the buyer files suit. Second, plaintiffs argue that the doctrine of equitable recission mandates that they be returned to the *status quo ante*, which requires an award of attorneys' fees. In response, defendants contend that the equitable rule that requires an injured parties' return to the *status quo ante* is inapplicable where the conditions of recission are otherwise agreed upon. Defendants argue that § 35–1–1530 dictates the terms of recission in this case, and that section does not provide for the payment of attorneys' fees. Third, plaintiffs contend that they can recover attorneys' fees on their common law

tort claims under the principal of mitigation of damages. Defendants argue that plaintiffs are not entitled to an award of attorneys' fees on their common law tort claims because there is no statutory or contractual basis for such an award, and their attorney's fees were not incurred in mitigation.[4]

### LEGAL ANALYSIS

When ruling on a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must take as admitted all allegations in the complaint, and the pleadings should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Tahir Erk v. Glenn L. Martin Co.*, 116 F.2d 865, 870 (4th Cir.1941). Furthermore, motions to dismiss in diversity cases must be decided by applying the law of the forum state. *Morgan v. American Family Life Assurance Co. of Columbus*, 559 F.Supp. 477, 480 (W.D.Va.1983).

The South Carolina Supreme Court has stated clearly when an award of attorneys' fees may be made: "As a general rule, attorneys' fees are not recoverable unless authorized by contract or statute." *Duke Power Co. v. South Carolina Public Service Commission*, 284 S.C. 81, 100, 326 S.E.2d 395, 406 (1985). In *Weeks v. McMillan*, 291 S.C. 287, 353 S.E.2d 289 (Ct.App. 1987), the South Carolina Court of Appeals even refused to adopt a bad faith exception to this rule. With this general rule in mind, the court turns to plaintiffs' three separate bases for an award of attorneys' fees.

### RIGHT TO ATTORNEYS' FEES UNDER USA

Plaintiffs base their claim to attorneys' fees under the USA on § 35–1–1490, which provides, in pertinent part:

---

4. At oral argument, counsel for the plaintiffs rested his entire case on the contention that § 35–1–1490 provides a basis for an award of attorneys' fees in this case. The court nonetheless addresses the other two bases for attorneys' fees that plaintiffs raised in their memorandum.

Any person who ... sells a security in violation of ... § 35–1–410 [unregistered broker-dealer or agent] or ... § 35–1–990 [failure to provide a prospectus]; ... or sells a security by means of any untrue statement of a material fact ... Is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six percent per year from the date of payment, costs, and reasonable attorneys' fees ... upon tender of the security.

S.C. Code Ann. § 35–1–1490 (Law. Co-op. 1987). Plaintiffs contend that because defendants admit that Kronenfeld sold them securities in violation of § 35–1–410 (unregistered broker-dealer or agent), they are entitled to sue for the attorneys' fees they incurred in obtaining defendants' offers of recission. Section 35–1–1490, however, cannot be read in isolation. Under the facts of this case, it must be read in conjunction with § 35–1–1530.

Section 35–1–1530 provides:

No person may sue under §§ 35–1–1490 and 35–1–1500 more than three years after the contract of sale. No person may sue under either section (a) if the buyer received a written offer, before suit and at a time when he owned the security, to refund the consideration paid together with interest at six percent per year from the date of payment, less the amount of any income received on the security, and he failed to accept the offer within thirty days of its receipt or (b) if the buyer received such an offer before suit and at a time when he did not own the security, unless he rejected the offer in writing within thirty days of its receipt.

S.C. Code Ann. § 35–1–1530 (Law. Co-op. 1987). Defendants contend that by extending offers to refund the full consideration paid, together with interest at 6% from the date of payment, they have effectively cut off plaintiff's right to sue for attorneys' fees under § 35–1–1490. Plaintiffs argue, however, that by accepting defendants' offer to rescind within § 35–1–1530's thirty day limitations period, they have preserved their right to sue for fees under § 35–1–1490.

The South Carolina Supreme Court has not addressed the question of whether § 35–1–1530 forecloses a buyer's right to sue for attorneys' fees under § 35–1–1490 where he receives the seller's offer to rescind before filing suit. Accordingly, this court must attempt to predict how the state supreme court would resolve this question. *GAF Corp. v. County School Board of Washington County, Virginia,* 629 F.2d 981 (4th Cir.1980). After examining the language of § 35–1–1530 and the few authorities that have interpreted statutes of virtually identical wording, the court finds that since plaintiffs received defendants' offers to rescind before filing suit, § 35–1–1530 forecloses their right to sue for attorneys' fees under § 35–1–1490.

It is clear from the language of § 35–1–1530 that if plaintiffs had rejected defendants' offers to rescind, they would have lost their right to sue for anything under § 35–1–1490, including attorneys' fees. Contrary to plaintiffs' contentions, it does not logically follow that by accepting defendants' offers to rescind, they preserved their right to sue for attorneys' fees under § 35–1–1490. The apparent purpose of § 35–1–1530 is to "allow parties to avoid litigation and quickly settle their differences." *Merchant v. Oppenheimer & Co., Inc.,* 568 F.Supp. 639, 642 (E.D.Va.1983) (construing subsection of Virginia statute virtually identical to § 35–1–1530), *aff'd in relevant part sub. nom., Dixon v. Oppenheimer & Co., Inc.,* 739 F.2d 165 (4th Cir. 1984). To permit a buyer to sue for attorneys' fees under § 35–1–1490 after he has received seller's offer to rescind would defeat the apparent purpose of § 35–1–1530 by taking away much of the seller's incentive to make the offer and resolve the matter out of court. *See* Glasser, *State Regulation of Capital Formation and Securities Transactions,* 45 P.L.I. Corporate Law and Practice Handbook, 837–838 (1983) ("Use of this provision [referring to the language of § 35–1–1530] will at the least save the seller from having to pay costs and attorney's fees and will bar the

buyer from recission if he does not accept the offer within the specified time.").

The weakness of the logic behind plaintiffs' position is highlighted by the lack of authority supporting it. This court, through independent research, has been unable to locate a single statute, case, commentary, or other legal resource that sanctions the award of attorneys' fees where recission or settlement occurred prior to the institution of litigation or an administrative proceeding and the only suit filed was one to recover attorneys' fees. *Cf. Latino Project, Inc. v. Camden*, 534 F.Supp. 390 (D.N.J.1982), *aff'd*, 701 F.2d 262 (3rd Cir.1983) (denying fees for work on informal administrative complaint based on alleged discrimination prohibited by Title VII of the Civil Rights Act of 1964 because no suit filed other than one requesting attorneys' fees under 42 U.S.C. § 1983). The plaintiffs candidly admit that they also have been unable to locate any authority that would support an award of attorneys' fees where the underlying claim was not litigated. *See* Plaintiffs' Memorandum in Opposition to Motion to Dismiss at 17.

On the other hand, there is controlling Fourth Circuit precedent which supports this court's holding that defendants' offers of recission, which were made before plaintiffs filed suit, cut off plaintiffs' right to sue for attorneys' fees under § 35–1–1490. In *Dixon v. Oppenheimer & Co., Inc.*, 739 F.2d 165 (4th Cir.1984), the Fourth Circuit interpreted a Virginia statute that had combined the language of § 35–1–1490 and § 35–1–1530. *See id.* at 166. There, the buyer accepted the seller's offer to rescind a sale of stock, but the parties subsequently disagreed on the amount of refund due.[5] Thereafter, the buyer filed suit requesting recission and attorneys' fees. The Fourth Circuit found that the buyer was entitled to attorneys' fees because he had to bring suit to obtain the amount of relief to which he figured he was entitled under the statute. According to the court,

> When read as a whole, § 13.1–522 provides for attorney's fees and costs when a plaintiff sues and successfully establishes that defendant is liable for failure to register. The procedure outlined under subsection (d) obviates the need for filing suit. In the instant case, the plaintiff was forced to file suit to obtain the remedy provided by the statute. Thus, the facts of this case do not track the procedure contemplated by subsection (d).

*Id.* at 168. As this language makes clear, it was only because Virginia Code's § 35–1–1530 counterpart (§ 13.1–522(d)) had not worked as intended that the court awarded the buyer the attorney's fees he had incurred in litigating his claim for recission. Unlike *Dixon*, the facts of this case *do* "track the procedure contemplated by [§ 35–1–1530]." Therefore, according to the Fourth Circuit's holding in *Dixon*, the defendants are not liable for attorneys' fees under the USA.

The court also notes that, contrary to their contentions, plaintiffs did not necessarily have to accept defendants' offers in order to preserve their right to attorneys' fees in this case. If plaintiffs could prove that the defendants had not provided them with a preliminary prospectus until nearly five months after the sale of the Westerbeke stock, plaintiffs could have sued for recission, attorneys' fees, and costs under federal law.[6] It is evident from the above authorities that the legislature's intention in adopting § 35–1–1530 was to provide sellers and aggrieved buyers with a compromise: buyers forego an award of attorneys' fees for certain payment, and sellers forego the expenses of litigation in return for paying only the purchase price, plus interest. Plaintiffs have reaped the benefits of that statute, now they must live

---

5. Plaintiff calculated that recission would entitle him to $91,708.01, but defendant offered only $39,942.23 to rescind the sale. There was a discrepancy because defendant contended that plaintiff should have to reduce his losses by his gains, while plaintiff argued that he had a right to either rescind or retain a stock purchased separate from any other stocks purchased from the unregistered agent. *Id.* at 167.

6. *See* 15 U.S.C. §§ 77e(b)(2) & 77k(e).

with the limitations of the remedy they elected.

## RIGHT TO ATTORNEYS' FEES UNDER DOCTRINE OF EQUITABLE RECISSION

■ Plaintiffs next argue that the doctrine of equitable recission entitles them to be returned to the *status quo ante,* which requires an award of attorneys' fees they incurred in obtaining recission. Plaintiffs, however, did not obtain recission here by filing suit in equity under the doctrine of equitable recission. Instead of suing for equitable recission, plaintiffs accepted defendants' offers to rescind made pursuant to § 35–1–1530. Again, plaintiffs cannot reap the benefits of that statute without living with its limitations.

The South Carolina Court of Appeals in *Williams v. Leventis,* 290 S.C. 386, 350 S.E.2d 520 (Ct.App.1986) noted that "the general equitable rule regarding a restoration of the status quo as a condition precedent to a recission or cancellation of a contract ... is inapplicable where the contract itself sets out the conditions upon which it may be rescinded or cancelled." 290 S.C. at 390, 350 S.E.2d at 522. Here, § 35–1–1530 sets out the conditions upon which a stock sale that is in violation of the USA may be rescinded, and that statute does not require the payment of attorney's fees. Thus, the court finds that it could not award plaintiffs attorneys' fees here under the doctrine of equitable recission without frustrating the legislature's intent in adopting § 35–1–1530.

## RIGHT TO ATTORNEYS' FEES UNDER THEORY OF MITIGATION OF DAMAGES

■ In requesting attorneys' fees under their common law tort claims, plaintiffs recognize that South Carolina does not allow recovery of attorneys' fees absent authorization by contract or statute. *Duke Power,* 284 S.C. at 100, 326 S.E.2d at 406. Plaintiffs, however, ask the court to distinguish between attorneys' fees incurred in litigation and those incurred in mitigation. Plaintiffs contend that their attorneys' fees in this case were incurred in an attempt to mitigate their damages and cite *Women's*

*Federal Savings & Loan Association of Cleveland v. Nevada National Bank,* 607 F.Supp. 1129, 1135–1136 (D.C.Nev.1985) for the principle that "the plaintiff is entitled to recover all legitimate expenses [including attorneys' fees] reasonably incurred in an honest endeavor to reduce the damages flowing from the defendant's wrongful acts." The facts of *Women's Federal,* however, are distinguishable from the facts of this case, and plaintiffs' reliance on a mitigation of damages theory as a basis for attorneys' fees here is misguided.

In *Women's Federal,* plaintiff, Women's Federal Savings & Loan Association of Cleveland (hereinafter "WOFED"), made a large loan to the Cavinaughs, owners of the Gold Dust West Casino (hereinafter "GDW"), on the condition precedent that defendant Nevada National Bank (hereinafter "NNB"), a local bank, would service the loan. NNB agreed to collect monthly payments, collect impound payments for taxes and insurance, and provide certain information to WOFED during the repayment period. GDW served as security for the loan.

Several years into the repayment period, the Cavinaughs stopped making their monthly loan payments. After inquiring with NNB, WOFED learned that NNB had failed to follow some of the requirements of their loan participation agreement, e.g., NNB had failed to establish an impound account for real estate taxes or insurance premiums. In addition, WOFED learned that the value of the GDW, which served as security for the loan, was in jeopardy. WOFED hurriedly sent two attorneys from its general counsel's office to Nevada to protect its position and meet with representatives of another institution about assuming the loan in question.

WOFED later brought suit against NNB seeking recission of the loan participation agreement and damages. Although the court refused to rescind the loan agreement, it awarded WOFED the attorney's fees it had incurred in protecting its position with respect to the Cavinaugh loan under a mitigation of damages theory. The court found that "[a]t the time, WOFED reasonably felt that its loan to GDW was in jeopardy and the NNB could

not be trusted to act as a fiduciary on WOFED's behalf." *Id.* at 1135.

Contrary to the situation described above, plaintiffs here did not incur attorneys' fees in performing a legal duty to mitigate damages that flowed from defendants' wrongful acts. The proper relief from defendants' wrongful acts in this case was recission, plus interest, which requires the refund of a fixed sum of money. Plaintiffs could not mitigate or decrease their measure of damages in any way by hiring attorneys.[7] Plaintiffs hired attorneys here merely to assert their claim for recission against defendants, and their attorneys' efforts were spent in anticipation of litigation, not in any attempt to mitigate plaintiffs' damages. Therefore, plaintiffs' third basis for attorneys' fees must also fail.

Because the court finds that plaintiffs have failed to state a claim for which relief can be granted, it is compelled by Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss their complaint for attorneys' fees.

---

**7.** Compare our facts with the facts of *Women's Federal,* where the attorneys' time was spent attempting to preserve the value of their client's security on a commercial loan, which was in jeopardy because of defendant's wrongful acts or omissions.