893 F.2d 1117
 133 L.R.R.M. (BNA) 2381, 114 Lab.Cas. P 11,810
 UNITED STATES POSTAL SERVICE, Plaintiff-Appellee,
v.
AMERICAN POSTAL WORKERS UNION, AFL-CIO, Defendant-Appellant,
v.
NATIONAL POST OFFICE MAIL HANDLERS, WATCHMEN, MESSENGERS AND
GROUP LEADERS DIVISION OF THE LABORERS'
INTERNATIONAL UNION OF NORTH AMERICA,
AFL-CIO,
Defendant-Cross-
Claimant-Appellee.
 No. 88-15284.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 5, 1989.
Decided Jan. 12, 1990.
 
 Darryl J. Anderson, O'Donnell, Schwartz & Anderson, Washington, D.C., for defendant-appellant.
 Kevin B. Rachel, Office of Labor Law, U.S. Postal Service, Washington, D.C., for plaintiff-appellee.
 Orrin Baird, Connerton, Ray & Simon, Washington, D.C., for defendant-cross-claimant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before NORRIS, THOMPSON and O'SCANNLAIN, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 The American Postal Workers Union ("APWU") appeals the district court's decision ordering tripartite arbitration among the APWU, the United States Postal Service ("USPS"), and the National Post Office Mail Handlers, Watchmen, Messengers and Group Leaders Division of the Laborers' International Union of North America ("Mail Handlers"). This case presents a question of first impression: whether a district court may order parties to submit a dispute to tripartite arbitration despite their contractual agreements which provide only for bipartite arbitration. We hold that a district court can enter such an order and properly did so in this case.
 
 FACTS
 
 2
 The APWU and the Mail Handlers represent postal employees. Until 1981, these two unions (and a third not involved in this case) bargained with the USPS collectively. Since 1981, however, the Mail Handlers have chosen to bargain separately.
 
 
 3
 The collective bargaining agreements between the USPS-APWU and the USPS-Mail Handlers are virtually identical in many respects. Both agreements contain broad provisions requiring that all disputes be submitted to arbitration. Formerly, when the unions negotiated as a unit, their single agreement contained a provision for tripartite arbitration to resolve disputes over which union had jurisdiction of a certain type of work. The present separate agreements do not contain such a tripartite arbitration provision.
 
 
 4
 The current dispute arose at the USPS' San Francisco Air Mail Facility when the USPS assigned work to employees under the Mail Handlers' jurisdiction. The APWU filed a grievance. It alleged that the work should have been assigned to members of its union according to Regional Instruction 399, "Mail Processing Work Assignment Guidelines," by which all three parties are bound. Following the grievance procedure, the USPS-APWU dispute was scheduled for arbitration. The Mail Handlers attempted to intervene in this arbitration. The arbitrator concluded that despite the Mail Handlers' obvious interest, they could not intervene because the USPS-APWU agreement did not permit such intervention.
 
 
 5
 On April 12, 1988, the USPS filed suit in district court against the APWU and the Mail Handlers to compel tripartite arbitration. The APWU filed an answer and asserted counterclaims against the USPS. The Mail Handlers filed an answer and asserted crossclaims and counterclaims against the USPS and the APWU seeking tripartite arbitration and a permanent injunction covering any future jurisdictional disputes. The parties moved for summary judgment. The court granted the USPS' motion for summary judgment and ordered tripartite arbitration. The Mail Handlers' request for a permanent injunction was denied. The court later amended its order and denied the APWU's summary judgment motion. The APWU appeals. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 ANALYSIS
 
 6
 A. Finality of the Order Compelling Arbitration as to the Mail Handlers
 
 
 7
 The APWU contends that because the district court's order only specifically denied the Mail Handlers' request for a permanent injunction, the Mail Handlers' motion for summary judgment seeking tripartite arbitration was never ruled upon; therefore there is no final judgment compelling tripartite arbitration as to the Mail Handlers. We disagree. The district court clearly ordered the requested tripartite arbitration and specifically denied the Mail Handlers' request for a permanent injunction. The district court recognized the Mail Handlers' entire summary judgment motion: "defendant Mail Handlers moves for summary judgment on both its counterclaim against plaintiff and its cross-claim against APWU." (emphasis added). These claims were for tripartite arbitration.
 
 
 8
 In light of the district court's order compelling tripartite arbitration pursuant to the USPS' motion, it would be illogical to assume that the court considered and rejected the Mail Handlers' motion for the same relief. All parties had a clear understanding of the practical effects of the judgment, and no prejudice results from construing the judgment as a final judgment in regard to both parts of the Mail Handlers' motion. The judgment entered August 12, 1988 serves as a "final decision" reviewable by this court. See Alaska v. Andrus, 591 F.2d 537, 540 (9th Cir.1979) (order did not expressly reject party's motion, but served as final judgment for purpose of appeal); cf. Bankers Trust Co. v. Mallis, 435 U.S. 381, 387, 98 S.Ct. 1117, 1121, 55 L.Ed.2d 357 (1978) (Court did not require order to be a separate document where the district court clearly evidenced its intent). We conclude that the order compelling tripartite arbitration is a final order as to the Mail Handlers, as well as to the USPS and the APWU.
 
 
 9
 B. Authority to Order Tripartite Arbitration
 
 
 10
 1. Applicability of Section 301 of the Labor-Management Relations Act, 29 U.S.C. Sec. 185(a) (1982)
 
 
 11
 Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. Sec. 1208(b) (1982), grants district courts jurisdiction over suits for violation of contracts among the USPS and unions representing postal employees. Section 1209 provides that all consistent provisions of title 29, chapter 7, subchapter 11 apply. Thus, cases interpreting the nearly identical Labor-Management Relations Act section 301, 29 U.S.C. Sec. 185(a) (1982), have been applied to determine the scope of a district court's authority in cases under the Postal Reorganization Act. See, e.g., American Postal Workers Union v. United States Postal Serv., 823 F.2d 466, 469 (11th Cir.1987); National Ass'n of Letter Carriers v. United States Postal Serv., 590 F.2d 1171, 1174-75 (D.C.Cir.1978).
 
 
 12
 2. Contractual Nexus Required for Compulsory Arbitration
 
 
 13
 Despite a presumption for arbitration when a contract contains an arbitration clause, AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986), a court can only compel arbitration pursuant to the parties' contract. See, e.g., United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"); Gateway Coal Co. v. United Mine Workers, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974) ("No obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so."). For the district court to have the power to compel tripartite arbitration, a contractual nexus is required as to both (a) the parties and (b) the subject matter.
 
 
 14
 In the current dispute, all parties agree that the merits of the work jurisdiction dispute are covered by the arbitration provisions of both the USPS-APWU contract and the USPS-Mail Handlers contract. Thus, although separate contracts exist, the dispute will be arbitrated; the question is which parties will participate in the first round of arbitration.
 
 
 15
 The Supreme Court has been somewhat lenient in deciding which parties will be required to arbitrate. The Court has not required strict contractual privity. See, e.g., John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) ("successor employer" bound to arbitrate under predecessor's agreement with union). Nevertheless, some contractual nexus must exist. See Laborers' Int'l Union v. W.W. Bennett Constr. Co., 686 F.2d 1267, 1274 (7th Cir.1982) ("Bennett "). In the current dispute, all parties are contractually obligated to arbitrate, albeit in bipartite proceedings. See id.
 
 
 16
 Only if the arbitrator is empowered to make binding interpretations of both agreements in the usual three-party jurisdictional dispute can he resolve the entire controversy as would the NLRB. At a minimum, this would require that each union be bound by an arbitration agreement with its employer which arguably covers work assignment disputes.
 
 
 17
 Id. at 1276. Tripartite arbitration is, in effect, a consolidation of two individual, consensual arbitrations. See id. at 1274. Here, the requisite contractual nexus is present: all of the parties have agreed to the arbitration of the merits of the current dispute.
 
 3. Suitability of Tripartite Arbitration
 
 18
 Despite the existence of the requisite contractual nexus, the district court must examine other factors to ensure that tripartite arbitration is a suitable remedy for the actual case before it. See Columbia Broadcasting Sys., Inc. v. American Recording & Broadcasting Ass'n, 414 F.2d 1326, 1329 (2d Cir.1969) ("CBS ") (although the district court had power to order tripartite arbitration because of the contractual nexus, there was still a question as to whether the power was properly exercised). These factors include (a) the nature of the relevant arbitration provisions, (b) the invocation of each arbitration provision by a party to the agreement, and (c) any procedural concerns surrounding the implementation of tripartite arbitration. See Bennett, 686 F.2d at 1274; CBS, 414 F.2d at 1329.
 
 
 19
 Here, each separate agreement in question contains a provision requiring arbitration of any:dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment. A grievance shall include, but is not limited to, the complaint of an employee or of the Union(s) which involves the interpretation, application of, or compliance with the provisions of this Agreement or any local Memorandum of Understanding not in conflict with this Agreement.
 
 
 20
 Article 15, Sec. 15.1, USPS-Mail Handlers Agreement, July 21, 1984-July 20, 1987; USPS-APWU Agreement, 1984-1987. By the use of these broad arbitration provisions, the parties have expressed a strong general preference for arbitration of contractual disputes.
 
 
 21
 We are also satisfied that "each arbitration agreement had been invoked by a party to the agreement." Bennett, 686 F.2d at 1274. The APWU clearly invoked its agreement with the USPS by initiating the grievance procedure. Further, the Mail Handlers' attempt to intervene in the arbitration was essentially an invocation of its agreement with the USPS. The Mail Handlers could not actually invoke the arbitration procedures under its agreement until the work was taken from its jurisdiction. However, the Mail Handlers clearly evidenced a desire to arbitrate. The Mail Handlers will not be penalized for attempting a more timely resolution of the dispute.
 
 
 22
 We are not faced with any procedural difficulties in this case. See Bennett, 686 F.2d at 1275 n. 3 (noting possible difficulty in selecting a neutral arbitrator pursuant to two different agreements). The Mail Handlers have agreed to follow the arbitration procedures outlined by the USPS-APWU agreement. Thus, the APWU will not be prejudiced by any alterations to the procedural structure of the arbitration to which it agreed. See, e.g., Avis Rent A Car Sys. v. Garage Employees Union, 791 F.2d 22, 23-25 (2d Cir.1986) (arbitrator chosen under the "significantly different" procedure of an agreement cannot apply substantive provisions of a second agreement).
 
 
 23
 Compelling all three parties in this case to submit their grievance to the same arbitration is practicable, economical, convenient, and fair. It not only avoids duplication of effort, but also avoids the possibility of conflicting awards. See CBS, 414 F.2d at 1329. In our circuit, the possibility of conflicting awards is a serious threat because of our decision in Louisiana-Pacific Corp. v. International Bhd. of Electrical Workers, 600 F.2d 219 (9th Cir.1979). Parties must request court intervention before receiving conflicting awards, otherwise the conflicting awards will stand--even if the awards claim to apply the same substantive rule. Id. at 226 (court reserved opinion on the propriety of compelling tripartite arbitration).
 
 
 24
 Finally, the conclusions of the arbitrator should be considered. Although the arbitrator denied the Mail Handlers' petition to intervene in the USPS-APWU arbitration, he did so because he concluded that the USPS-APWU contract did not permit him to admit the Mail Handlers to the arbitration. Nonetheless, the arbitrator expressed his view that tripartite arbitration would be appropriate. He stated: "There is no question that the Mail Handlers have a strong, legitimate interest in the outcome of this arbitration." The arbitrator was also concerned "about the fundamental fairness of a grievance arbitration wherein the employer rather than the union represents the interests of certain employees. Tripartite arbitration is clearly the most sensible way to proceed."
 
 
 25
 In light of the trend in federal common law toward compelling tripartite arbitration under similar circumstances, we conclude that the district court did not err in ordering the APWU, the Mail Handlers, and the USPS to engage in tripartite arbitration. See Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456-57, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957) (Federal courts must apply "federal law, which the courts must fashion from the policy of our national labor laws.... The range of judicial inventiveness will be determined by the nature of the problem.").
 
 C. Statute of Limitations
 
 26
 The APWU also argues that the USPS suit was untimely. The USPS filed suit in district court approximately eight months after the arbitrator refused to permit the Mail Handlers to intervene in the APWU-USPS arbitration.
 
 1. The Six-Month Statute of Limitations
 
 27
 Section 301 does not contain any statute of limitations period. Thus, the Supreme Court has held that the timeliness of a section 301 suit for breach of a collective bargaining agreement is determined "as a matter of federal law, by reference to the appropriate state statute of limitations." UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 705, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966). However, the Supreme Court modified this decision and applied the six-month statute of limitations in section 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b) (1982), to a "hybrid" section 301/unfair representation action. Del Costello v. International Bhd. of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).
 
 
 28
 This circuit, in Teamsters Union Local 315 v. Great Western Chem. Co., 781 F.2d 764 (9th Cir.1986), held that the same six-month period should apply to the filing of a petition to compel arbitration of a dispute under a collective bargaining agreement. Id. at 769. The six-month period enables parties to attempt private dispute reconciliation, yet provides for a relatively rapid resolution of the labor dispute. See id. at 767. The period begins to run from the time one party makes it clear that it will not submit the matter to arbitration. Id. at 769.
 
 
 29
 The APWU failed affirmatively to plead or assert the six-month statute of limitations as a defense in the district court. Federal Rule of Civil Procedure 8(c) requires that a statute of limitations defense be pleaded or it is waived. Perry v. O'Donnell, 749 F.2d 1346, 1353 (9th Cir.1985). Moreover, the APWU did not rely on the six-month limitations period in opposing the USPS' motion for summary judgment. It relied solely on the California 100-day limitations period, which we discuss infra. Accordingly, the six-month limitations period was waived as a defense and we will not consider it for the first time on appeal. See Bolker v. Commissioner, 760 F.2d 1039, 1042 (9th Cir.1985).
 
 2. California's 100-Day Limitations Period
 
 30
 The APWU argues that California's 100-day limitations period, contained in Cal.Civ.Proc.Code Sec. 1288 (West 1982),[1] applies to the USPS suit, because the parties essentially seek to overturn an arbitration decision. Although we agree that California's 100-day limitations period applies to suits to overturn an arbitration decision, Fortune, Alsweet & Eldridge, Inc. v. Daniel, 724 F.2d 1355, 1356 (9th Cir.1983) (per curiam), we disagree with the APWU's characterization of the present suit.
 
 
 31
 This suit is one which seeks to compel tripartite arbitration. When the arbitrator refused to permit the Mail Handlers to intervene in the USPS-APWU arbitration, he limited his decision to the explicit terms of the USPS-APWU contract. He specifically noted that he did not have authority to compel tripartite arbitration apart from the terms of the contract. Cf. United Bhd. of Carpenters v. FMC Corp., 724 F.2d 815, 817 (9th Cir.1984) (relief sought could have been obtained in arbitration proceeding--Oregon state statute of limitations, not federal six-month statute applicable). We do have authority, under federal common law, to compel tripartite arbitration. This is the relief sought in this case. The suit is not one seeking to overturn an arbitration decision. It is a suit independent of the arbitration decision seeking relief which could not be obtained in the arbitration proceeding. We conclude that California's 100-day statute of limitations is inapplicable.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 Section 1288 provides:
 A petition to vacate an award or to correct an award shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on petitioner.
 Cal.Civ.Proc.Code Sec. 1288 (West 1982).